(47 Misc. Rep. 37.)

## In re KEOGH.

(Surrogate's Court, Westchester County. April, 1905.)

1. WILLS—CONSTRUCTION—VESTING OF REMAINDER.

Testator gave to certain trustees a one-fifth part of all his estate, to hold in trust during the life of his brother, and to let the property from time to time, keep the personal estate invested, and, after paying all the necessary expenses, pay over the income of such trust to his brother semiannually, and on his death to transfer the remainder, and income then remaining, to the children of his brother in equal proportions, and to the child or children of any who may be dead, and further provided that if the brother should die, leaving no children or grandchildren, that the said one-fifth part of his estate should be given to the children of his sister before mentioned in the will. The will gave the executors a discretionary power of sale of the real estate. It appeared, on an accounting for the purpose of distributing the corpus of the estate, that a portion of the trust estate came into the hands of the trustee in a partition suit. *Held*, that the interest in the remainder held in trust for the brother did not vest until the date of distribution.

2. PROBATE COURT—JURISDICTION—CONSTRUCTION OF WILL.

In an accounting in the Surrogate's Court, the surrogate has authority to determine all questions relating to the construction of the will, though the disposition of the proceeds of real estate is involved.

3. WILLS—CONSTRUCTION—DEVISE PER CAPITA.

Where testator gave one-fifth part of his estate in trust for his brother, with a provision that on the death of the brother the property should be divided among the children of his brother or his grandchildren, but that, if he left no child or grandchildren, then "to the children of my sisters hereintofore mentioned, the child or children of each to take an equal portion thereof," the gift over to the children of testator's sister was to them as a class and per capita.

4. PERPETUITIES—ACCUMULATION OF INCOME.

Where a will creates a trust fund and provides for semiannual payments of interest to the life tenant, but with no prohibition from paying the income oftener, if the trustee so desires, there is no violation of the statute against accumulation.

In the matter of the accounting of Martin J. Keogh, trustee of David Jones, deceased. Decree rendered.

John F. Coffin, for trustee.

Rawdon W. Kellogg, for Mary T. Scudder.

Walter R. Beach, for Daniel J. Griffith, Margaret E. Griffith, and Susan D. Griffith.

Montfort & Faber, for George A. Thayer and others, children of Jane J. Thayer.

Cannon & Atwater, for Julia D. Haviland.

Shiland, Shoemaker & Hedges, for David J. Dannat and William T. Dannat.

John M. Digney, special guardian.

David McClure, for Walter D. Starr.

John P. Elder, as executor, etc., pro se.

SILKMAN, S.  The surviving trustee comes into court and presents his account for the purpose of distributing the corpus of the trust estate left by testator under the provisions of the sixth paragraph of his will for the benefit of his brother, John J. Jones, now deceased.  David Jones, the testator, died at New Rochelle, in this county, on January 17, 1881, unmarried and without issue.  There survived him as only next of kin a brother and four sisters, namely, John J. Jones, Mary J. Griffith, Susan J. Dannat, Jane J. Thayer, and Margaret A. Jones.  John J. Jones was married, but childless. Margaret was unmarried, while the other three sisters all had children.  Mary J. Griffith had four children, Daniel J., Margaret E., Susan D., and Mary J., Jr., all of whom, except the last named, Mary J., Jr., who died in 1901, unmarried and without issue, survived the said John J. Jones.  Susan J. Dannat had four children, David J., William R., Julia D., and Mary C.  Julia married a Haviland, and Mary married a Starr.  All of these children, except Mrs. Starr, who died in September, 1904, leaving two children, Walter D. Starr and Chandler D. Starr, survived the said John J. Jones. Jane J. Thayer had seven children, Magarette J., Jennie, Atala, Arnold, George A., Mary, and Francis, all of whom survived the said John J. Jones.  Margaret A. Jones, when testator died, was and has remained unmarried.  She is now upwards of 75 years of age.

The scheme of testator's will is very simple. After directions for the payment of debts and funeral expenses, the disposing part of the instrument is contained in five paragraphs, numbered second to sixth, inclusive, all in identical language, except in the name of the life beneficiary; a trust being created by each of the brother or a sister.  The following is the paragraph under which one-fifth of the residuary estate was to be held in trust for the brother, John J. Jones, and of which a distribution is now sought to be had:

"Sixth:  I give, devise and bequeath to the said Wilson G. Hunt, Hamilton Blydenburgh, Alexander Thayer and John J. Jones, executors and trustees aforesaid, the remaining one equal fifth part of all my estate, real and personal (after payment of debts and funeral expenses, as aforesaid), to have and to hold the same to them and the survivors and survivor of them for and during the life of my brother, John J. Jones, in trust nevertheless, to take possession of the real estate, keep the same in suitable and proper repair, keep the buildings thereon well insured, and to let or lease the same from time to time and for such term of time within the lifetime of my said brother, as to them may seem best, and for the best rent that can be obtained therefor; to keep the personal estate safely and securely invested, and to collect the rents and profits of the real estate and the interest, dividends and income of the personal estate, and after paying all taxes, assessments, expenses of repair, insurances and all other legal and necessary charges and expenses, pay over the residue or net proceeds of said remaining one-fifth part of my estate so given in trust to them, as last aforesaid, to my said brother, John J. Jones,

semiannually during his life, and immediately upon his death the said trustees and survivors and survivor of them shall grant, convey, transfer and deliver over the said remaining one-fifth part of my estate so given to them in trust as last aforesaid, and any income thereof then remaining in their hands to the lawful children of my said brother in equal portions, share and share alike; and to the child or children of any who may be dead, the grandchild or children in such case to take the same share or portion that the parent would have taken if living. In case my said brother, John J. Jones, shall die leaving no child, children, grandchild or grandchildren him surviving, I direct the said trustees then to grant, convey, transfer and deliver over the said remaining one-fifth part of my estate so given to them in trust, as last aforesaid, together with any income thereof remaining in their hands to the children of my sisters hereinbefore mentioned, the child or children of each to take an equal portion thereof."

By the seventh paragraph the executors are given a discretionary power of sale of the real estate. The property left by David Jones consisted of both real and personal estate, and the one-fifth share now to be distributed is made up from both classes of property. The portion which was the proceeds of real estate came into the hands of the truste under a decree in a partition suit, to be administered by him under the trust contained in the will. A conversion of the real estate became necessary, in order to effect a division of the estate into five parts.

The questions which are presented upon this accounting are: First. Has the Surrogate's Court jurisdiction to construe the testator's will in so far as it may relate to real estate or its proceeds? Second. Did the interest in the remainder held in trust for John J. Jones vest upon the death of the testator? Third. Is the gift over of the remainder to the children of the testator's sisters to them as a class and per capita, or do they take per stirpes? Fourth. Is there an unlawful accumulation of income?

There would seem to be little doubt, under the authorities, that wherever it may be necessary to accomplish distribution in an accounting in the Surrogate's Court, of which proceeding the surrogate has general jurisdiction, the court has authority to determine all questions of construction, although the disposal of the proceeds of real estate is involved. Purdy v. Hayt, 92 N. Y. 446; Matter of French, 52 Hun, 303, 5 N. Y. Supp. 249; Matter of Austin, 35 App. Div. 278, 55 N. Y. Supp. 52. A contrary view is reached by the General Term of the Fifth Department in Matter of Shrader, 63 Hun, 36, 17 N. Y. Supp. 273; but this authority the Appellate Division of the Second Department refused to allow in Matter of Austin, supra, upon the ground that it was in direct conflict with the decision of the Court of Appeals in Matter of Kellum, 50 N. Y. 298. While the executors in the case at bar under their discretionary power did not convert the realty into personalty, nevertheless the same result was accomplished by a sale in partition made necessary to set off the several shares, and, the proceeds having come into the hands of the trustees, such proceeds are to be regarded, not as land, but as personal property, the same as if the conversion was by the executors under their power of sale.

We now come to the question as to whether the interest of the

remaindermen vested as of the date of testator's death, or whether such remainder was contingent and vested only in those who answered the description of distributees under the terms of the will at the time of the death of the life tenant. The primary object of testator's bounty under the sixth clause was his brother John. The future estate, after this brother's life estate was ended, was for the latter's children and grandchildren, if any. The testator contemplated, as we may gather from the language of the will, the probability of John having children. Nevertheless, as in the cases of his sisters, provision is made for the disposition of the remainder should John die without issue, in which case the trustees were "then to grant, convey, transfer and deliver over * * * to the children of my sisters hereinbefore mentioned." The sole words of gift in the will are to the trustees, "to have and to hold the same to them, and the survivors and survivor of them, for and during the life of my brother, John J. Jones." There are no words which import or disclose an intent to make a present gift to either the children and grandchildren of John or to the children of the testator's sisters. All was to remain in abeyance and wait the fulfillment of testator's primary purpose, which continued, not only "during the life of," but also "for," his brother. Upon the brother's death the trustees are specifically directed to "grant, convey, transfer and deliver over the said remaining one-fifth part of my estate so given to them in trust." The only gift of the remainder is this direction to the trustees to transfer and deliver over at a future time. Those who were to take the remainder were to take through the medium of a power in trust, and the time of vesting of the interest was deferred in form at least until the time of distribution.

The general rule of construction applicable in a case of this character is that where there is no gift, but by a direction to executors or trustees to pay or divide and to pay at a future time, the vesting in the beneficiary will not take place until the time arrives. Warner v. Durant, 76 N. Y. 133; Smith v. Edwards, 88 N. Y. 92; Delafield v. Shipman, 103 N. Y. 463, 9 N. E. 184; Matter of Baer, 147 N. Y. 348, 41 N. E. 702; Matter of Crane, 164 N. Y. 71, 58 N. E. 47; Lewisohn v. Henry, 179 N. Y. 352, 72 N. E. 239; Herzog v. Title Guarantee & Trust Co., 177 N. Y. 86, 69 N. E. 283, 67 L. R. A. 146. In Matter of Baer, the court said:

"Where final division and distribution is to be made among a class, the benefits of the will must be confined to those persons who come within the appropriate category at the date when the distribution or division is directed to be made. Bisson v. W. S. R. R., 143 N. Y. 125, 38 N. E. 104; Goebel v. Wolf, 113 N. Y. 405–411, 21 N. E. 388, 10 Am. St. Rep. 464; Teed v. Morton, 60 N. Y. 506; In re Smith, 131 N. Y. 239, 30 N. E. 130, 27 Am. St. Rep. 586. In such cases the gift is contingent upon survivorship, and, if it vests at all before the date of distribution, it is subject to be divested by the death before that time of a person presumptively entitled to share in the distribution. * * * Moreover, there is not in this devise any words of direct or immediate gift to the children or heirs of the brother. * * * They were to take through the medium of a power in trust. * *. * It is a case, then, where, as the cases express it, 'futurity is annexed to the substance of the gift.' * * * The devise is designed to be contingent, and survivorship at the time of distribution is an essential condition to the acquisition of an interest in the subject of the gift."

There is nothing in the will before us, either taking the language of the sixth paragraph alone, or taking the instrument as a who'e, that discloses an intent or purpose that any part of the trust estates created should vest before the date of distribution, or any purpose to clothe those entitled to an estate in remainder therein with any power in any manner over it, during the running of the life estate of the brother, John. No such intent being discoverable, we are not called upon to depart from the plain and distinct character of the language used, nor apply the rule of law which favors the vesting of estates. The general rule to which we have referred, however, is neither inflexible nor arbitrary, and is to be applied in subordination to the testamentary intention, and not as destructive of it. Matter of Young, 145 N. Y. 535, 40 N. E. 226. The following exceptions thereto have been noted: In Goebel v. Wolf, 113 N. Y. 405, 21 N. E. 388, 10 Am. St. Rep. 464, because "this construction also prevents the disinheritance of issue of any child who may marry and die before the expiration of the trust period." In Matter of Tienken, 131 N. Y. 391, 30 N. E. 109, because, "wherever it was possible, consistently with the trust for the life beneficiary, to give remaindermen immediate possession, it is given at once and absolutely." This, with other indications, made the purpose and intent of testator obvious and clear, and led to following Goebel v. Wolf. In Shangle v. Hallock, 6 App. Div. 55, 39 N. Y. Supp. 619, the terms of the gift over were such as to leave no substantial doubt as to the intention of the testator. In Matter of Young, supra, the children, among whom a fund held in trust for the life of the wife was to be divided and distributed, were named and specified individually. In the residuary clause, also, there was an immediate gift to them each by name, and it was held that the direction to divide was a mere postponement of the possession for the purpose of letting in the provision for the widow. In Matter of Crane, 164 N. Y. 71, 58 N. E. 47, Chief Judge Parker, writing the opinion, groups these exceptions as follows:

"First. If the postponement of the payment is for the purpose of letting in an intermediate estate, then the interest shall be deemed vested at the death of the testator, and the class of legatees is to be determined as of that date, for futurity is not annexed to the substance of the gift."

Under Mr. Jones' will futurity was annexed to the substance of the gift. As we have shown by the clear and unmistakable language used, the class entitled to the future estate became fixed and known, not at testator's death, but upon the expiration of the intermediate estate. The case at bar does not fall within the first class of exceptions. The chief judge then says:

"The second exception is where there are words importing a gift in addition to the direction to executors or trustees to pay over, divide, or distribute. In such a case the general rule of construction does not govern, because the language employed, outside of the direction to divide or distribute. imports a gift, and therefore the situation is precisely as if the will contained words of gift."

In the will before us there are no words importing a gift in addition to the direction to grant, convey, transfer, and deliver "upon

his death" (referring to the life tenant). This phrase "upon his death" must be construed as was done in Lewisohn v. Henry, supra; the court using this language:

"The use of the word 'upon,' followed by a direction to convey, indicates that until the contingency named should happen there was to be no vesting."

Neither of the exceptions referred to by the Court of Appeals is applicable to David Jones' will, and the general rule of construction as above stated must apply.

The result arrived at would seem to have conclusive support in the statement of the rule as contained in Matter of Crane, supra, in which the court said:

· "Aside from the direction to the executors or trustees to divide and distribute the estate, there are no words importing a gift, and hence it becomes our duty to give force and effect to the rule that, where the only gift is found in a direction to divide or pay at a future time, the gift is future, not immediate; contingent, not vested."

The conditions make most strongly in favor of the nonvesting at the time of David Jones' death, for the reason that the persons now entitled to take only became so entitled because John J. Jones died without issue; and evidently the idea of their taking was just as remote to the testator's mind as it was when he provided in identical language for his sisters who had families of children at the time of his death.

The third and more difficult question to be examined is as to the construction to be put upon and the effect to be given the words: "To the children of my sisters hereinbefore mentioned, the child or children of each to take an equal portion thereof"—whether the equality refers to the parent or to the child or children. If the former, there would be a distribution per stirpes; and if the latter, per capita. The first indication we have as to the intention of the testator is the provision which he makes for the children of deceased children, when he directs distribution by the trustees upon the death of the life tenant "to the lawful children of my said brother in equal portions, share and share alike, and to the child or children of any who may be dead, the grandchild or children in such case to take the same share or portion that the parent would have taken if living." This language is clear and unambiguous, and provides for an equal division, the equality being in the stock; but when he comes to provide for his nieces and nephews, in case his brother should die without issue, the language is significantly different. If he had stopped with the sentence "to the children of my sisters hereinbefore mentioned," under the authorities they would undoubtedly have taken as a class per capita. Matter of Kimberly, 150 N. Y. 90, 44 N. E. 945. The question, then, is whether the use of the words following, "the child or children of each to take an equal portion thereof," was intended to change what would have been the legal result, had those words not been added, or were they used simply as a paraphrase, and to make more certain that which testator felt might be in doubt. I am inclined to the opinion that the latter is the correct view to take. It gives effect to the different

forms of expression used in dealing with John Jones' children and grandchildren, if any, on the one hand, and John Jones' nieces and nephews on the other, and it is in line and harmony with the established theory and practice of the law in reference to the distribution of estates under the statute of distributions.

The law favors equality of inheritance according to stock. Nevertheless, at least in the distribution of personal property, this policy should be limited to lineals. If it were otherwise, and the law favored per stirpes inheritance of personalty by collaterals, then it would be in direct opposition to the scheme of the statute of distributions as it was in existence from the time of Justinian. It may be that within the last few years the policy of the Legislature in regard to this statute has undergone a change; but, however this may be, at the time of David Jones' death it was in force with all its antiquity. It provided for equal distribution among collaterals of the same degree of relationship. In the ordinary course of life a parent, in distributing his or her estate among his descendants, has in mind and feels a sense of obligation to deal with each of his children and theirs in terms of equality. The parental mind is not swerved by the consideration of individual affection greater for one rather than for another, but is influenced by a paramount desire to be impartial. On the other hand, in dealing with collaterals, human experience teaches us that the idea of impartiality is not the dominant and controlling power. It is rather a feeling of individual regard and affection that governs and prompts legacies to them.

In this case, David Jones, having no children of his own, stood to his brother and sisters in the attitude of a parent. The scheme of his will distinctly shows that there was present in his mind, so far as they were concerned, a desire for equality and impartiality for them and their descendants. Nevertheless, he contemplated a possibility that they might die without descendants, and therefore provision had to be made for such a contingency. Each had been given an equal share and no charge of favoritism could be sustained. Nevertheless there was the possibility of a lapse, and this he covered by a provision in each of the several trusts for a gift over to the children of his brother and sisters. These were his nieces and nephews, all of equal degree to him, and, in the absence of any evidence to the contrary, all stood equal in his affections. He had performed the duty of dividing his estate equally for the benefit of his brothers and sisters, and when he reached the subject of this contingency he was governed, not by duty, but by the sentiment which made each niece and nephew equal in their relation to him. It was the same human sentiment that must have dictated the original statute of distributions several hundred years ago and which has come down to a recent period with but slight change. That the latter consideration controlled testator's disposition is evidenced by a failure to make provision for grandnephews and grandnieces in case their parents were dead. The weight of the argument is in favor of a distribution to the children of testator's sisters per capita, and the construction that the words

"the child or children of each to take an equal portion thereof" means equality among all those who take, without regard to their stock.

The fourth and final question is as to whether, in making the gift over, which in terms includes income, there is any violation of the statute against accumulations other than during the minority of an infant. The language is:

"Upon his death the said trustees, the survivors and survivor of them, shall grant, transfer, convey and deliver over the said one-fifth part of my estate so given to them in trust as last aforesaid, and any income thereof remaining in their hands to the lawful children of my said brother in equal portions, share and share alike."

If we were to construe the words "and any income thereof then remaining in their hands" as a gift of income which had accrued during the lifetime of John J. Jones, an illegal accumulation would be clearly contemplated. But there are two meanings which may be given to the language used, one resulting in an illegal provision, and the other in consonance with law, and we are required to favor that construction which tends to make valid, rather than invalid, each and every part of the testamentary document. If we construe the use of the words "and any income thereof then remaining in their hands" to relate to income accruing subsequent to the death of the life tenant and prior to the time of the actual distribution, no law is violated, and such is a very reasonable construction to give to the language used. To say that it includes all income in the trustees' hands undistributed at the date of the death of the life tenant, we would not only offend the statute, but public policy as well. It would be putting it in the power of the trustee, either through unavoidable accident or willful or negligent delay in paying over income to determine the ownership thereof.

While the provision is made for semiannual payments to the life tenant, there is no prohibition against paying the income oftener, if the trustee so desired. The direction to make semiannual payments is for the protection and convenience of the trustee, not for that of the life tenant, because the law would require payments to be made at least semiannually if not much oftener. Under the interpretation I have indicated as proper there is no violation of the statute against accumulations such as would give the income which had accrued up to the date of the life tenant's death to the persons presumptively entitled to the next eventual estate. It belongs to the legal representative of the life tenant. The words "and any income thereof then remaining in their hands" relate only to such income as may have accrued subsequent to the death of the life tenant.

The result, therefore, is that the decree should provide for the payment of the income which had accrued upon the trust estate prior to the death of the life tenant to his legal representative, and for the distribution of the corpus of the trust estate held under the sixth paragraph of testator's will in equal portions per capita among the nieces and nephews of John J. Jones, the life tenant.

Decreed accordingly.