(112 App. Div. 397)

### MATHERS v. INTERURBAN ST. RY. CO.

(Supreme Court, Appellate Division, Second Department. April 20, 1906.)

STREET RAILROADS—INJURY TO PEDESTRIAN—QUESTIONS FOR JURY—CONTRIBU-
TORY NEGLIGENCE.

In an action against a street railway company for injuries to a pedes-
trian who was struck by a car as he was crossing the street, evidence *held*
to authorize a submission to the jury of the question of plaintiff's contribu-
tory negligence.

Appeal from Trial Term, Westchester County.

Action by Joseph W. Mathers against the Interurban Street Railway
Company. From a judgment for defendant, plaintiff appeals. Re-
versed and remanded.

Argued before HIRSCHBERG, P. J., and HOOKER, GAYNOR,
RICH, and MILLER, JJ.

Thomas J. O'Neill, for appellant.

Anthony J. Ernest (Bayard H. Ames, on the brief), for respondent.

GAYNOR, J. The jury could have found from the evidence that
the plaintiff was crossing 3d avenue, Manhattan, at the lower crossing
of 30th street from east to west at an ordinary walk; that as he left the
curb he looked up and down 3d avenue, and saw a car up near 31st
street coming down and another down at 29th street coming up (i. e.,
on the east track); that another car going uptown was at the time pass-
ing the crossing he was on; that no other cars were between 29th and
31st streets; that he walked across in the rear of the said uptown car
that was passing at the time, and as he came out from behind it was hit
by the downtown car.

The plaintiff was nonsuited for not looking uptown again before
going on the downtown track. This was error. When he looked on
leaving the curb the downtown car was that far away that it was at
least a question of fact whether it was contributory negligence not to
look again. I do not see it would be of any use to cite decisions.

The judgment is reversed.

Judgment reversed, and new trial granted; costs to abide the event. All
concur.

---

(112 App. Div. 414)

### In re KEOGH.

### In re JONES' WILL.

(Supreme Court, Appellate Division, Second Department. April 20, 1906.)

1. WILLS—CONSTRUCTION—VESTING OF REMAINDER.

Testator devised one-fifth of his estate in trust during the life of his
brother to pay the net income to his brother semiannually for life, and on
his death to transfer the corpus and income then remaining to the brother's
children in equal proportions and to the child or children of any dead,
and if the brother should die leaving neither children nor grandchildren,
the trust res should be given to the children of his sisters; the child or
children of each to take an equal portion thereof. *Held,* that the re-
mainder to the children of testator's sisters did not vest in them until the
time for distribution.

98 N.Y.S.—28

**2. SAME—DEVISE TO CLASSES.**

Where testator gave one-fifth of his estate in trust for his brother, with a provision that on the brother's death the property should be divided among the brother's children or grandchildren, but, if he left neither, then to the children of testator's sisters, the child or children of each to take an equal portion thereof, the gift in remainder was to the children of each sister as a class by representation.

**3. SAME—INCOME—ACCUMULATION.**

Where a will created a trust, and provided for semiannual payments of income to the life tenant without any provision that it should not be paid oftener, the income vested in the life tenant as it was paid in, so that the income which had accrued at the time of the life tenant's death passed to his personal representative.

Appeal from Surrogate's Court, Westchester County.

Judicial accounting of Martin J. Keogh, as sole surviving trustee of the last will of David Jones, deceased. From a surrogate's decree (95 N. Y. Supp. 191) construing the will, certain legatees appeal. Modified and affirmed.

Argued before HIRSCHBERG, P. J., and JENKS, HOOKER, RICH, and MILLER, JJ.

Charles M. Cannon, for appellant Julia D. Haviland.

Walter R. Beach, for appellants Griffith.

David McClure, for appellant Walter D. Starr.

John M. Digney, for appellant Chandler D. Starr.

Shilund, Shoemaker & Hedges, for appellant William T. Dannat.

Wilfrid N. O'Niel, for appellants Cannon and another, as administrators of David J. Dannat.

Henry A. Monfort, for respondents Thayer.

John P. Elder, in pro. per., as executor of John J. Jones.

Townsend Scudder, for respondent Mary Thayer Scudder.

MILLER, J. The testator the construction of whose will is involved in this appeal died January 17, 1881, leaving as his only surviving next of kin John J. Jones, a brother, and Mary J. Griffith, Susan J. Dannat, Jane J. Thayer, and Margaret A. Jones, sisters. The particular paragraph of the will to be construed is as follows:

"Sixth: I give, devise and bequeath to the said Wilson G. Hunt, Hamilton Blydenburg, Alexander Thayer and John J. Jones, Executors and Trustees as aforesaid, the remaining one equal fifth part of all my estate, real and personal (after payment of debts and funeral expenses as aforesaid). To have and to hold the same to them and the survivors and survivor of them for and during the life of my brother John J. Jones, in trust, nevertheless, to take possession of the real estate, keep the same in suitable and proper repair, keep the buildings thereon well insured and to let or lease the same from time to time and for such terms of time within the lifetime of my said brother as to them may seem best and for the best rent that can be obtained therefor, to keep the personal estate safely and securely invested and to collect the rents and profits of the real estate and the interest, dividends and income of the personal estate and after paying all taxes, assessments, expenses of repairs, insurance and all other legal and necessary charges and expenses pay over the residue or net proceeds of said remaining fifth part of my estate so given to them in trust as last aforesaid to my said brother John J. Jones semi-annually during his life, and immediately upon his death the said trustees, the survivors and survivor of them shall grant, convey, transfer and deliver over the said remaining one-fifth part of my estate so given to them in trust as last aforesaid and any income thereof remaining in their hands to the

lawful children of my said brother in equal portions share and share alike, and to the child or children of any who may be dead, the grand child or children in such case to take the same share or portion that the parent would have taken if living.  In case my said brother John J. Jones shall die leaving no child, children, grand child or grand children him surviving, I direct the said trustees then to grant, convey, transfer and deliver over the said remaining one-fifth part of my estate so given to them in trust as last aforesaid, together with any income thereof remaining in their hands to the children of my sisters hereinbefore mentioned, the child or children of each to take an equal portion thereof."

In like language he created four other trusts of the remaining four equal fifth parts of his residuary estate for the benefit of each of his four sisters, respectively, using the same language in the disposition of the remainders in each case.  The brother, John J. Jones, died November 14, 1904, leaving no descendants.  The sister Margaret never married.  The sister Jane J. Thayer has seven children.  The sister Mary J. Griffith had four children, one of whom predeceased the said brother, John J. Jones, leaving no descendants, and the sister Susan J. Dannat had four children, one of whom predeceased the said brother, John J. Jones, leaving two descendants.

Three questions are argued on this appeal, viz.:  First. Did the remainder of the trust estate for the brother, John J. Jones, vest upon the death of the testator?  Second. In the division of said remainder, did the testator intend equality among his nephews and nieces, or equality among his sisters' children by classes, each class including the child or children of a sister?  Third. To whom did the accrued income not distributed at the time of the death of said John J. Jones pass?

We think the learned surrogate correctly held that there was no vesting of the remainders until the time for distribution arrived, and his opinion is so satisfactory upon this point that we desire to add nothing to it.

We do not agree, however, with the construction adopted respecting the division of the remainder.  It may be granted that, in the absence of anything in the will evincing a contrary intent, the remaindermen would take equally, and it may also be assumed that they would take equally but for the phrase "the child or children of each to take an equal portion thereof"; but we think that this phrase, when construed in the light of the manifest testamentary scheme, evinces an intention to treat the child or children of each sister as one class, and to divide the remainder equally among the different classes.  The expression "per stirpes" may not be strictly applicable to this case, as, technically, said children do not take by representation; and yet we think in the mind of the testator the children of each sister were regarded simply as the representatives of such sister.  As the learned surrogate aptly says, the will clearly shows that the testator stood in the attitude of parent to his brother and sisters, and it is clear that he intended to divide his estate equally among them, preserving it so far as he could by the creation of trust estates, terminating upon the death of each, respectively.  There is nothing in the will to suggest that the testator had nephews and nieces in mind other than as representatives of their parents, or that he desired upon any contingency a distribution of his estate other than in accordance with his paramount intention of preserving equality among the

brothers and sisters and their descendants as representatives. With this in mind, we are prepared to determine what he meant by the phrase "the child or children of each to take an equal portion thereof," because it cannot be supposed that these were idle words. Had said phrase been omitted, there might have been force in the argument that, respecting the share of each brother or sister dying without descendants, he intended to depart from the general scheme of preserving equality among brothers and sisters, and the expression must have been used either to make such intention clear or to evince a contrary intent. If it was used to make clear the intention claimed by the respondents, it was certainly very inapt. The word "each" refers to sisters, and the expression should be read, "the child or children of each sister to take an equal portion thereof." Does the equality sought to be maintained refer to the sisters or the children? If he had in mind simply the children, it would have been very easy to have provided for a distribution among his "nephews and nieces equally." He does not say that "each child shall take an equal portion," nor that "the children of each shall take equal portions." The words "child" and "children of each" are used in the alternative, and plainly refer to a class. It will not be profitable to discuss the rules which have governed the descent or distribution of intestates' estates, or the authorities bearing on such questions, because all agree that in case of a will the intention of the testator is controlling. For cases analogous to the case at bar, see Ferrer v. Pyne, 81 N. Y. 281, and Vincent v. Newhouse, 83 N. Y. 505. It is true that, respecting the share of each brother or sister dying leaving descendants, he provided by apt language for representation among such descendants, so that they should take "per stirpes"; but the fact that he omitted to provide for representation so that the child or children of a child dying should take the share of the parent in the contingency which has happened, and which he may well have regarded as remote, does not militate against the position that he intended to treat the child or children of each sister as a separate class. This will was executed in 1866, and, in the absence of anything to indicate the contrary, it must be supposed that he considered his prospective nephews and nieces as representatives of parents, among whom he desired equality. As the language employed, construed according to its grammatical construction, evinces such intention, and as this construction is in harmony with the whole testamentary scheme, it should be adopted.

As to the third question, we think that the conclusion of the learned surrogate that the unpaid income accrued prior to the death of said John J. Jones passed to his personal representative is correct. Although the will provided for semiannual payments of income, in the absence of anything to the contrary, it must be assumed that the testator intended the immediate vesting in the life beneficiary of all income upon its being paid in. Smith v. Parsons, 146 N. Y. 116, 40 N. E. 736. The postponement of such vesting for however short a time would offend the statute against unlawful accumulations. Section 4, Personal Property Law, Laws 1897, c. 417, p. 508; section 51, Real Property Law, Laws 1895, c. 547, p. 568; Cray v. Hegeman, 92 N. Y. 508. There is nothing in the will showing an intention to postpone the immediate vesting of income, unless it be found in the words, "together with

any income thereof remaining in their hands," found in the provisions directing the distribution of the remainder upon the death of said John J. Jones. As the learned surrogate remarked, those words may well refer to the time of distribution, for obviously the testator must have known that some time must elapse between the death of said John J. Jones and said distribution; but in any event an expression which might refer to either the death of the life beneficiary or the distribution of the remainder, found in the clause providing for such distribution, should not be given an effect which would invalidate the plain disposition of the income during the term of the trust provided in another part of the will.

The decree should be modified to the extent of providing that the corpus of the trust estate created by the sixth paragraph of the will, together with all income thereon which has accrued subsequent to the death of the life beneficiary, be distributed among the nephews and nieces of the testator living at the time of the death of said life beneficiary, or to the personal representative of any since dying, in the following proportions: One equal third part thereof to the children of Mary J. Griffith; one equal third part thereof to the children of Susan J. Dannat; one equal third part thereof to the children of Jane J. Thayer; and, as modied, affirmed, with costs to all parties payable out of the estate. All concur.

---

(112 App. Div. 377)

## In re McAVOY'S ESTATE.

(Supreme Court, Appellate Division, Second Department. April 20, 1906.)

TAXATION—LEGACIES—BEQUESTS FOR MASSES.

    Testatrix, after directing that all her just debts and funeral and testamentary expenses be paid, bequeathed $800 to a priest, or, in the event of his death, to his successors as pastor of a certain church, to be used in saying 800 low masses for the repose of the soul of herself and three others. *Held*, that such bequest was not exempt from transfer taxes as funeral expenses.

Appeal from Surrogate's Court, Kings County.

Proceeding for the assessment of a transfer tax on a legacy bequeathed to Rev. Father Guhl by the will of Mary J. McAvoy, deceased. From an order of the Surrogate's Court exempting the bequest, the Comptroller appeals. Reversed.

Argued before WOODWARD, JENKS, GAYNOR, and RICH, JJ.