CHEMICAL BANK AND TRUST COMPANY, as Successor Trustee, Appellant, *v.* THOMAS STREAT, Individually, et al., Respondents, and THOMAS STREAT, as Administrator of the Estate of BERTHA STREAT, Deceased, et al., Appellants.

160

(Submitted October 6, 1933; decided December 5, 1933.)

*Charles C. Parlin, Paxton Blair* and *Aldis H. Wurts* for plaintiff, appellant. The rights reserved in the deed of trust to qualify or alter the *cestui que trust's* right to the income expired with the settlor. ( *Kissam* v. *Dierkes,* 49 N. Y. 602.) The legal effect of the deed is to make an unconditional gift to the *cestui que trust* of all income accruing after the settlor's death. The construction adopted by the court below contravenes the statute against accumulations and should be avoided. (*Equitable Trust Co.* v. *Miller,* 197 App. Div. 391; 233 N. Y. 650; *Matter of Hoyt,* 116 App. Div. 217; 189 N. Y. 511; *Crawford* v. *Dexter,* 178 App. Div. 764; 224 N. Y. 586; *Bloodgood* v. *Lewis,* 209 N. Y. 95; *Matter of Keogh,* 112 App. Div. 414; 186 N. Y. 544; *Curtis* v. *Curtis,* 184 App. Div. 274; *Matter of Bavier,* 164 App. Div. 358, 363; *Matter of Megrue,* 170 App. Div. 653; 217 N. Y. 623; *Hill* v. *Guaranty Trust Co.,* 163 App. Div. 374; *Matter of Meyer,* 140 Misc. Rep. 1.)

*Charles Furnald Smith* for Thomas Streat, as administrator of the estate of Bertha Streat, deceased, appellant. Where a trust is created for a life beneficiary, with restrictions or conditions as to the time or circumstances of the payment of income for the use or benefit of the life beneficiary, the income is nevertheless the absolute property of the life beneficiary. (*Bloodgood* v. *Lewis,* 209 N. Y. 95; *Matter of Hoyt,* 116 App. Div. 217; *Curtis* v. *Curtis,* 185 App. Div. 391; *Matter of Lamb,* 182 App. Div. 180; 224 N. Y. 577; *Crawford* v. *Dexter,* 178 App. Div. 764; 224 N. Y. 586; *Matter of Bavier,* 164 App. Div. 358; *Hill* v. *Guaranty Trust Co.,* 163 App. Div. 374; *Matter of Meyer,* 140 Misc. Rep. 1.) The holding that the distinctly personal right of the settlor to withdraw the trust income passed on his death to his residuary legatee is unsupported by law. (*Kissam* v. *Dierkes,* 49 N. Y. 602; *Matter of Wainman,* 121 Misc. Rep. 318; *Matter of Grant,* 122 Misc. Rep. 491; *Flynn* v. *McDermott,* 183 N. Y. 62.)

*Harold A. Donegan, Hersey Egginton* and *T. R. Iserman* for Chemical Bank and Trust Company et al., as committee of Bertha Streat, an incompetent person, appellant. The Appellate Division erred in holding that the right of the beneficiary to the income under the trust was subject to certain conditions precedent. (*Curtis* v. *Curtis,* 185 App. Div. 391; *Bloodgood* v. *Lewis,* 209 N. Y. 95.) Any construction of the trust agreement which would sustain the residuary legatee's claim to the trust income would necessarily invalidate the entire trust agreement and would conflict with the decisions. (*Kissam* v. *Dierkes,* 49 N. Y. 602; *Croker* v. *Croker,* 117 Misc. Rep. 558; *Pray* v. *Hegeman,* 92 N. Y. 508; *Matter of Hoyt,* 116 App. Div. 217; *Matter of Meyer,* 140 Misc. Rep. 1; *Matter of Keogh,* 112 App. Div. 414; *Bloodgood* v. *Lewis,* 209 N. Y. 95; *Hill* v. *Guaranty Trust Co.,* 163 App. Div. 374;

*Matter of Bavier,* 164 App. Div. 358, 363; *Crawford* v. *Dexter,* 178 App. Div. 764; 224 N. Y. 586; *Curtis* v. *Curtis,* 184 App. Div. 274; 185 App. Div. 391.)

*William A. Young* for Herbert G. Streat et al., appellants. The accumulated income in the possession of the trustee and the surplus in the possession of the committee should be paid to the administrator of the estate of the beneficiary, and by him distributed among her next of kin. (*Matter of Meyer,* 140 Misc. Rep. 1; *Matter of Hoyt,* 116 App. Div. 217; *Crawford* v. *Dexter,* 178 App. Div. 764.) That the beneficiary had funds of her own sufficient for her support is immaterial in the construction of the trust agreement. (*Gasquet* v. *Pollock,* 1 App. Div. 512; 158 N. Y. 734; *Pray* v. *Hegeman,* 92 N. Y. 508.)

*Joseph Larocque* and *William H. Crawford* for Thomas Streat, individually, respondent. The gift of testator's whole residuary estate to his brother carried with it, not only all the tangible property of the decedent which remained after the payment of administration expenses and bequests and the purchase of the annuity, but also all intangible property, including the right to all the income of the trust fund, subject only to the contingent charge in favor of the beneficiary. (*Matter of Hunt,* 207 App. Div. 127; 237 N. Y. 613; *Hadcox* v. *Cody,* 213 N. Y. 570; *Matter of Knapp,* 122 Misc. Rep. 346; *Mayer* v. *American Security & Trust Co.,* 222 U. S. 295; *Riker* v. *Cornwell,* 113 N. Y. 115; *Matter of Miner,* 146 N. Y. 121; *Matter of Allen,* 151 N. Y. 243; *Seibert* v. *Miller,* 34 App. Div. 602; *Matter of Vanderbilt,* 229 App. Div. 574; *Matter of Arnolt,* 127 Misc. Rep. 579.)

O'BRIEN, J. James Streat, a bachelor nearly eighty years of age, and his sister Bertha, a spinster of seventy, resided together in New York city. The brother possessed a competence and the sister had an annual income amounting to $8,000 or $9,000. In March, 1924, Miss

Streat was stricken with apoplexy and in the following
month her brother established a trust fund of approxi-
mately $100,000 which, under certain conditions, was
to be for her benefit. The Chemical National Bank,
predecessor of this plaintiff, was made trustee. In
December of the same year the settlor died. By his
will, executed three months subsequent to the establish-
ment of the trust and six months prior to his death, he
directed his executors to purchase an annuity for his
sister sufficient to insure payment of $20,000 per annum,
and this direction was obeyed. His will also provided
that in the event that the trust agreement should be in
force at the time of his death, it should remain in force
during the lifetime of his sister, and that upon her death
all funds subject to that agreement should become part
of his residuary estate. His brother Thomas was made
the residuary legatee.

After the settlor's death his sister was adjudged incom-
petent, and in May, 1925, the Chemical National Bank
and another were appointed a committee of her person
and property. The committee received the annuity as
well as the income from the incompetent's individual
estate. Exclusive of income from the trust fund, there-
fore, the sum of $28,000 or $29,000 per annum became
available for Miss Streat's maintenance. The committee
never expended more than $15,000 in any one year toward
her support and this sum is found to be all that was
reasonable and proper. Nevertheless the trustee paid
over to the committee between December, 1925, and
February, 1927, the sum of $7,408.76 from the income of
the trust fund. In November, 1930, Bertha Streat died
intestate and Thomas Streat was appointed her adminis-
trator. At the time of the death of the beneficiary, the
trustee had in its possession the sum of $17,012.76,
accrued income from the trust fund.

The Appellate Division has decided that the $7,408.76
was improperly paid over to the committee and has

surcharged the trustee with that sum and has held that it, together with the $17,012.76 accrued income, belongs to the residuary legatee of the settlor rather than to the estate of the conditional beneficiary of the trust.

Unless the settlor made a present unqualified gift of the income to the beneficiary, the judgment is correct. Supported by evidence is the finding by the Appellate Division that James' purpose in executing the deed of trust was not to increase Bertha's income but it was to insure her against a loss of income in case she should be unable to collect the income from her own property, and also the finding that before making payments from the trust fund the fact must appear to the trustee either that Bertha was in need of funds for her maintenance or for any other purpose or that the need arose from lack of availability of her own funds or from her inability to take the steps necessary to procure payment of such funds.

During the lifetime of the settlor the gift was, by the terms of the trust agreement, certainly no more than conditional. The right retained by the settlor to receive the income under certain conditions prevents the conclusion that the gift was absolute. The agreement recites James Streat's purpose to provide a fund which may be available for his sister's maintenance " either when her individual income is insufficient for her needs, or when she is unable to obtain prompt payment thereof, whether by reason of her own physical disability, or otherwise." It authorizes and directs the trustee, whenever in its judgment the sister is in need of funds and " such need arises from lack of availability of her own funds or from her inability to take steps necessary to procure payment to her of such funds," in its discretion to pay out in a spirit of the broadest liberality such amounts, if necessary even from the principal, as may be proper in its judgment adequately to maintain her. James reserves the right to receive and retain any and

all income from the securities constituting the trust fund and to revoke the agreement at any time, and he directs, in case of the termination of the trust by his sister's death subsequent to his own death, that the trust securities shall be turned over by the trustee to his estate. By the terms of his will, the agreement " shall remain in force during the lifetime of my said sister." Also appears the provision for the purchase of a $20,000 annuity. There is no language in either instrument indicating an intent to transform, after the settlor's death, the qualified gift into an absolute one. Whatever conditions, not exclusively personal, existed during his life were to remain in force after his death.

Not only the whole tenor of the trust agreement but the specific verbiage employed in that instrument manifests the clearest intent on the part of the settlor to withhold an absolute gift. The provision made for the sister's maintenance was expressly held in reserve until such a time as drafts upon it might become necessary. During the lifetime of the conditional donor not one cent was ever expended from this trust fund for the benefit of the sister. It was all received and retained by him. The referee and the unanimous Appellate Division have held as matter of law that such right is a property rather than a personal right and we agree. A property right of course is transferable by will. That at some time necessity might require the use of part or even all of the income and the principal was a contingency clearly recognized by the settlor. Protection of his aged, shattered sister from want, safeguarding her every comfort, convenience and even luxury, appear both in the trust agreement and in the will to have been his dominant purpose. This object he accomplished without drawing upon either the principal or the income of the trust fund which had been designed by him to constitute only the last possible defense. The income from his sister's individual estate added to the annuity amounted

to nearly twice the sum deemed necessary by the trustee to be expended for her support. The conditions prescribed in the deed of trust never arose. The provisional beneficiary was, therefore, not entitled, under the terms of the trust agreement, to the income from the trust fund during the settlor's life.

Since Bertha was not entitled absolutely during her brother's life to any income from the trust, conditions were not changed by his death. Inasmuch as she possessed no unqualified property interest her estate derived no larger benefit. The settlor, if he had so elected, might have revoked the deed of trust, but so long as he refrained from the act of revocation the deed remained in full force, with all its conditions, until the death of Bertha. Irrespective of the question whether the property right to receive and retain any or all of the income which the settlor reserved to himself passed, during Bertha's life, to the residuary legatee by virtue of the settlor's will, in any event it was not transferred to Bertha, for the contingencies mentioned in the agreement never happened. Moreover, while that instrument stood unrevoked, the settlor himself and his successor in interest were shackled by the conditions which he imposed. His own right to the income was not unrestricted. It was no more free from limitations than his sister's, but it was subject to her necessities. To hold that James' intent was to provide a fund available for her maintenance, if in the reasonable judgment of the trustee it should be required, and at the same time to retain an absolute right to compel the trustee to pay over the income to him even if his sister's necessities were dire, would lead to such an inconsistent result as could follow only from an indefensible interpretation. Always, while the trust was in existence, the trustee was empowered, in the exercise of a reasonable interpretation of the conditions in the deed of trust and even against the consent of the settlor or the residuary legatee, to expend

the whole or any part of the income and the principal for the maintenance of the conditional beneficiary.

Even though the trustee never was impelled by its judgment to draw upon the trust fund either during the life of the settlor or after his death, there would be no illegal accumulation. The trust deed did not direct an accumulation of income. It contemplated the probability that it would not be needed for Bertha's support yet also recognized the possibility, in the event of her inability to secure sufficient revenue from her individual investments during his life and the conceivable failure of the annuity after his death, that income from the trust might become indispensable. Such income as might remain uncollected by James or the residuary legatee and unexpended at any particular time by the trustee for Bertha's needs was not intended to exist as a dormant accumulation awaiting the termination of the trust for the benefit of some remainderman. The purpose can fairly be interpreted as a right belonging to the settlor and to the residuary legatee with the trustee's consent either to receive and retain the income or to allow it to accrue into a reserve to be expended for Bertha in an emergency. At any time it might be called into active service.

The principle in *Matter of Hoyt* (116 App. Div. 217; affd., 189 N. Y. 511) is entirely different. In that case the courts decided that the entire income was intended absolutely to be devoted to the use of the beneficiary. The same is true in respect to *Matter of Keogh* (112 App. Div. 414; affd., 186 N. Y. 544). Also in *Bloodgood* v. *Lewis* (209 N. Y. 95) an absolute gift was made which was qualified only by the manner of payment. The rule in *Cochrane* v. *Schell* (140 N. Y. 516) that, in the absence of an express direction for the accumulation of surplus income, a direction may sometimes be implied is rendered inapplicable by the provision in this trust agreement that the settlor retains the right to collect all the income

<span></span>

and by the fair interpretation that such conditional. property right, subject to the necessities of the provisional beneficiary, passes after the death of the settlor and before the termination of the trust to the residuary legatee. An implied direction leading to an invalid result must if reasonably possible be avoided. (*Equitable Trust Co.* v. *Miller*, 197 App. Div. 391; affd., 233 N. Y. 650.) By the settlor's testamentary disposition, not only the corpus but "all funds then subject to said agreement" became part of his residuary estate. These funds necessarily include the accrued income undisbursed by the trustee for the benefit of Bertha and uncollected under the terms of the trust by the settlor and his nominee, the residuary legatee. This provision negatives any idea of an absolute gift to Bertha.

The use of the words "all funds then subject to said agreement" in the will is in marked contrast to such phraseology employed in the trust agreement as was intended to describe merely the principal of the trust. In no other instance in either document does the settlor and testator utilize a single phrase to express a combination of principal and income. In the deed of trust appear such verbiage as "a fund," "the securities," "said fund," "securities constituting the trust fund," "principal of the trust fund," all of which must in reason be deemed to apply only to the corpus. Again in the trust agreement is used, in contradistinction to the idea of principal, the term "accumulated income of the trust fund," thus, in the deed of trust, marking as emphatic a separation as is conceivable between the corpus and the product yielded from the principal. In the will James disposes into his residuary estate not alone the principal or the fund or the securities or said fund or the securities constituting the trust fund, but he directs that "*all* funds then subject to said agreement" shall go to his brother Thomas as residuary legatee. To refuse to recognize this distinction would be to ignore plain

language and to thwart the intent of the settlor and testator.

The judgment should be affirmed, with costs to each appellant filing a brief payable out of the principal of the trust fund.

HUBBS, J. (dissenting). James Streat, a bachelor, who for many years had resided with a sister, Bertha Streat, on April 10, 1924, made a trust agreement in which she was named as *cestui que trust* and plaintiff was named as trustee. The sister owned property which, under ordinary conditions, would provide an income of from $8,000 to $9,000 per year. About a month prior to the execution of the trust agreement, she was stricken with apoplexy with resulting paralysis which rendered her almost entirely helpless, physically, and caused impairment of her mentality. James Streat, the settlor, also had suffered one stroke of apoplexy and his state of health was precarious. A solicitous interest in the welfare of his sister is evidenced not only by the previous relationship of the parties and their physical impairments at the time, but as well by the language and provisions of the trust agreement, the material parts of which read as follows:

" WHEREAS the first party desires at all times to fully provide for the care, maintenance, and support of his sister, Miss Bertha Streat, and although his said sister owns a considerable amount of cash, securities and property, neverthless, at times her physical health is such that she is unable to perform the acts necessary to collect the income therefrom so as to provide her with needed funds,

" *Now therefore,* for the purpose of providing a fund which may be available for and applied to the care, maintenance, and support of his said sister, Bertha Streat, either when her individual income is insufficient for her needs, or when she is unable to obtain prompt payment thereof, whether by reason of her own physical disability, or otherwise, the first party does hereby assign, transfer and set over unto the second party the securities

set forth in Schedule 'A' hereto annexed. Said fund is to be held by the second party until the death of Miss Bertha Streat, the sister of the first party, or the revocation of this instrument by the first party, whichever event shall first happen.

"The first party reserves the right from time to time to change or alter the securities constituting the trust fund and to receive and retain any and all income that may have been collected thereon.

"The second party is authorized and hereby directed at any time it may be made to appear to it that Miss Bertha Streat, first party's said sister, is in need of funds for care, maintenance, or support, or for any other purpose, and such need arises from lack of availability of her own funds or from her inability to take steps necessary to procure payment to her of such funds, to pay out for the care, maintenance, and support of the said sister of the first party, or for any other similar purpose, such amounts as may be proper in its judgment to adequately care for, maintain, and support her. In exercising such discretion it is the desire of the first party that the broadest liberality be shown. Such payments to be made out of the accumulated income of the trust fund, if there be sufficient on hand, and if such income be insufficient, then out of the principal of the trust fund.

"The first party reserves the right to revoke this agreement at any time and to retake and repossess himself of the securities constituting the trust fund. In case of the termination of this agreement by the death of the first party's said sister, Miss Bertha Streat, then the securities constituting the trust fund, or so much thereof as may remain, shall be turned over by the second party to the first party, or to his estate, if he be not then living."

From the time of the execution of the agreement to the date of his death on December 21, 1924, James Streat, the settlor, exercised the right reserved in the third

paragraph quoted to take the income collected by the trustee from the trust fund.

On July 2, 1924, less than three months after signing the trust agreement, James Streat executed a will in which he directed his executors to purchase annuities amounting to $20,000 per year for his sister, Bertha Streat, and directed that if the trust agreement should still be in force at the time of his death, the same should remain in force during the lifetime of his sister, and that upon her death all funds then subject to said agreement be disposed of as provided as to his residuary estate. The use of the words " all funds " does not indicate that he had in mind or referred to accumulated income as those are the very words which he repeatedly used in the trust deed as meaning the principal of the trust. He devised and bequeathed his residuary estate to his brother, Thomas Streat.

After Mr. Streat's death, Bertha Streat was found to be incompetent to manage her affairs and a committee of her person and property was appointed. The executors of the will of James Streat purchased for Bertha Streat annuities sufficient to insure her an annual income of $20,000, and payments were thereafter made by them to the committee of Bertha Streat at that rate down to the time of her death.

Following the death of James Streat, the trustee made certain disbursements for the account of Bertha Streat to her, to Thomas Streat and to others. After the appointment of the committee, the trustee adopted the practice of paying over income to the committee and between December 16, 1925, and February 28, 1927, paid over income amounting to $7,408.76. On or about the latter date, Thomas Streat, the residuary legatee, notified the trustee that he objected to the payment of income to the committee, and thereafter no payments were made.

On November 25, 1930, the date of the death of Bertha

Streat, the amount of the income of the trust fund held by the trustee amounted to $17,012.76. This action was instituted by the trustee for the settlement of its account and for advice as to the proper distribution of the balance of income remaining in its hands.

The action was tried before a referee who approved the accounts with minor corrections, and held that the deed of trust made a present valid gift of the entire income from and after the death of the settlor to Bertha Streat, that the income in the amount of $7,408.96 paid to her committee during her life was properly paid, and that Thomas Streat, as administrator of her estate, was entitled to receive all income remaining in the hands of the trustee as of the date of the death of Bertha Streat.

The judgment of the Supreme Court entered upon the report of the referee was modified by the Appellate Division by surcharging the trustee with the amount of the payments made to the committee of Bertha Streat; by directing that all accumulated income be paid to the defendant Thomas Streat individually, and by surcharging the committee with the further sum of $606.98, interest on the accumulations of income in its hands. The important question for determination is whether Bertha Streat became entitled to the entire income from the trust fund from the date of the death of James Streat during the remainder of her lifetime despite the conditions contained in the trust agreement as to payment and disbursement of such income for her benefit.

We believe a proper construction of the trust agreement requires an affirmative answer to that question.

It is a general rule, well supported by authority, that instruments creating trusts under which the trustee is directed to pay over such income as may be necessary for the care, support and maintenance of a designated beneficiary vest in the designated beneficiary the entire income and not merely such portion as the trustee finds is actually necessary for the care and support of the

beneficiary, and that an unexpended part of income becomes a part of the estate of the beneficiary. (*Bloodgood* v. *Lewis,* 209 N. Y. 95; *Matter of Keogh,* 112 App. Div. 414; affd., 186 N. Y. 544; *Matter of Megrue,* 170 App. Div. 653; affd., 217 N. Y. 623.)

The fact that the majority of the cases supporting the rule involve the construction of testamentary trusts is due rather to the greater frequency with which the question has been presented in the construction of testamentary trusts than to any difference in principle.

The two conditions upon the happening of which the trustee was authorized to pay out the income of the trust fund for the benefit of the sister were not conditions precedent to her right to receive the income, but were conditions which attach only to the paying out of the income. The income was absolutely appropriated by the terms of the trust and the limitation was on the distribution of such income. There is a broad distinction between ownership of an income held in trust and the right to receive such income under the terms of the trust. The trustee was, under the terms of the trust deed, the custodian and conserver of the income of the trust fund with a discretion as to when and how it should be paid out for the benefit of the sister. (*Matter of Hoyt,* 116 App. Div. 217; affd., 189 N. Y. 511.)

Nor does the fact that James Streat, the settlor, reserved the right to change the securities in the trust and have the income paid to him during his lifetime make necessary the application of a different rule. The right reserved was personal. No grant of such a right to another upon his death is contained in the trust deed. That he intended to make the trust provision for his sister and to so limit the grant as to give to another the right to defeat the entire purpose of the trust is not to be presumed.

It is contended that unless the right to receive the accumulated income be held to pass under the will of deceased, the trust must be held void because violative

of the statute against perpetuities. Since we hold that the gift was of the entire income not paid to the settlor under the right reserved, no question of a possible unlawful accumulation is presented.

The object of the statute is to prevent postponement of the vesting of title to property beyond the prescribed period and not to make it unlawful to place restrictions upon the time of payment or application of the property in fulfillment of the purposes of the trust. The securities were placed in the hands of the trustee for the sole purpose of the protection of the sister Bertha. No restriction is placed upon the title to the income; no gift over is made in the event that the trustee shall not find it necessary to pay to or for Bertha Streat, and the direction as to what is to be done upon the death of his sister is limited specifically to the securities constituting the trust fund or so much thereof as may remain, which securities are directed to be turned over to his estate.

That he meant that the principal and not accumulated income should be turned over to his residuary estate is indicated by the fact that the instrument recites the assignment to the trustee of " the securities set forth in Schedule ' A ' hereto annexed. Said fund is to be held by the second party, * * *."

That it was intended that the accumulated income should at all times be available for use in the care of his sister and that it was contemplated that the income would accumulate in the hands of the trustee, is evidenced by the provision in the agreement reading as follows: " such payments to be made out of the accumulated income of the trust fund, if there be sufficient on hand, and if such income be insufficient, then out of the principal of the trust fund."

There is nothing inconsistent with this purpose or indicating any different intent on the part of James Streat in the fact that he created an annuity for his sister under his will. He recognizes in his will the existence

of the agreement. He says in that will: " If the agreement heretofore entered into by me, under date of May 10, 1924, with the Chemical National Bank of the City of New York, shall still be in force at the time of my death, I direct that the same shall remain in force during the lifetime of my said sister, Bertha Streat, and that upon her death all funds then subject to said agreement shall be disposed of as hereinafter provided as to my residuary estate."

The funds which he had in contemplation when that clause was inserted in the will is indicated in the trust agreement where direction is given as to the disposition of the principal of the trust fund. Nothing in the deed of trust, in the will or the relation of the parties indicates an intent on the part of the settlor that the income in question should go to any one other than his sister Bertha.

Doubtless the settlor at the time he executed the trust deed and placed therein the clause reserving the right " from time to time to change or alter the securities constituting the trust fund and to receive and retain any and all income that may have been collected thereon," had in mind that as long as he lived he could and would look personally after the welfare and financial interests of his sister. He, therefore, reserved to himself the right to the income from the trust fund as long as he lived. He then provided for the payment of the income to his sister after his death. His purpose is unmistakable. It was to place with the trustee securities that would provide an income which the trustee might expend as and when needed by the sister, " such payments to be made out of the accummulated income of the trust fund, if there be sufficient on hand, and if such income be insufficient, then out of the principal of the trust fund."

At that time no one knew what the needs of the sister might be. In a certain year she might not need any of the income or only a part of it. Another year she might need more than the income for that year. If so, the

trustee was empowered to use accumulated income and part of the principal if necessary. The provision is inconsistent with the notion that the residuary legatee, under the settlor's will, might draw the income which the testator had expressly provided in the trust fund should be used for his sister.

We must look at the situation as the settlor looked at it at the time of executing the trust deed. What was his intent at that time? The fact that it afterwards happened that the sister did not need the entire income has no bearing upon the question of the settlor's intent. He was not going to take any chances that she should ever be in need. It was to prevent that very possibility that the trust was established. At that time his will had not been executed. We cannot know that at the time of the execution of the trust deed he even contemplated providing an annuity for his sister by will.

During the interval of about three months between the date of the trust deed and the execution of the will, there was in existence no provision disposing of any surplus income from the trust fund after the death of the sister. The terms of the trust deed did not make any such provision. It only provided that the securities should be turned over by the trustee upon the death of the sister. The will did not change the situation.

Since there is no express direction as to disbursement of the accumulated income upon the death of Bertha Streat, it must be held to pass to her estate in accordance with the general principle above set forth. It, therefore, follows that since the income vested in the beneficiary subject to the restriction placed upon the trustee in paying it out, it acted in a proper exercise of its discretion in making payments to the legally appointed committee of the *cestui qui trust* and should not be surcharged with the amount of such payments. Likewise, it should pay over to the legal representative of her estate the accumulated income which accrued prior to her death, with

interest thereon at clearing house rates from February 28, 1922, to November 25, 1930, as specified in the judgment entered upon the report of the referee.

We think the allowances made to counsel were excessive, and should be reduced in accordance with the judgment of the Appellate Division.

The judgment of the Appellate Division should be modified in accordance with this opinion and as modified affirmed, with costs in this court to each appellant filing a brief, payable out of the principal of the trust fund.

POUND, Ch. J., LEHMAN and KELLOGG, JJ., concur with O'BRIEN, J.; HUBBS, J., dissents in opinion in which CRANE and CROUCH, JJ., concur.

Judgment affirmed, etc.