134 So.2d 260 (1961)
Bruce STIFF and Josephine T. Stiff, his wife, Appellants,
v.
William J.C. NEWMAN and Jacquelin Newman, his wife, et al., Appellees.
No. 2154.
District Court of Appeal of Florida. Second District.
November 10, 1961.
*261 M.H. Edwards, Bartow, for appellants.
Fowler, White, Gillen, Humkey & Trenam, Tampa, for appellees.
WHITE, Judge.
The appellants, husband and wife, seek reversal of a final decree dismissing their suit to vacate a general release of liability executed by them in favor of the appellees who were defendants in the trial court. The said release and the pending litigation arose from a rear end automobile collision.
On March 5, 1957 plaintiffs Josephine T. Stiff and Bruce Stiff were traveling in their automobile in Polk County, Florida. They had come to a stop at an intersection traffic light when their automobile was struck from the rear by an automobile driven by the defendant Jacquelin Newman, wife of the defendant William J.C. Newman. The plaintiffs' automobile was damaged and they sustained personal injuries which apparently were not serious or disabling.
The circumstances of the collision raised a prima facie presumption of negligence on the part of the Newmans which was recognized by their insurance carrier, the defendant Security Mutual Casualty Company. A $1,044.15 settlement was effected,  $594.15 for automobile repairs and $450 for other losses, pain and inconvenience, and all claims arising from any "known and unknown, foreseen and unforeseen bodily and personal injuries * * *." On the sixth day after the accident the plaintiffs executed a conforming release which they later sought to revoke by means of the present litigation. The defendant W.T. Bice acted as insurance adjuster.
The complaint charged that the plaintiffs and adjuster W.T. Bice, in the execution and acceptance of the release in question, acted on the mistaken assumption that the plaintiffs' injuries were temporary. It was alleged that the plaintiffs, particularly Josephine Stiff, did not recover as anticipated in that subsequent examinations disclosed permanent injuries involving the back and neck of Josephine Stiff necessitating further treatment and additional expense. The plaintiffs accordingly urged that the release be set aside on the ground that it was executed under a mutual mistake of fact. The defendants contended, on the other hand, that the parties acted in good faith and without any mistake which would justify a nullification of the release. We here note that no question of fraud or deceit is involved in the case.
Thomas M. Caswell, M.D., examined Josephine Stiff without use of X-rays on March 5, 1957, the day of the accident. Stating the result of his examination, he testified:
"I had written here that she had sustained a whiplash injury of her neck and lower sacrum. I had written the word `minor', in other words minor whiplash injury of the neck and lower sacrum and did not advise treatment at that time."
*262 Dr. Caswell stated that he saw Josephine Stiff again on March 11, 1957. She told him that she had been nervous and was sleeping poorly since the accident. He gave her a sedative and advised her to check with her doctor when she returned home to Virginia. He further testified:
"* * * I had mentioned at this time her back was symptom free, according to my report. In other words, apparently, on the 11th, her back was feeling somewhat better."
Adjuster W.T. Bice testified that he had several conversations with the plaintiffs after the accident and that Josephine Stiff told him she had a back sprain and was nervous. He then talked with Dr. Caswell concerning her condition. He testified that later, on March 11, 1957, when the settlement was being effected Josephine Stiff read the release and that he discussed it with both plaintiffs and informed them that it was a general release in full settlement of any claims they might have.
The plaintiffs testified that they signed the release after only a casual reading. They stated that their primary concern was to secure their automobile, which adjuster Bice had caused to be repaired, and return to their home in Virginia. They confirmed the statements of Dr. Caswell but testified in substance that they did not have in mind the possibility of "flash back" effects as a result of the accident. Their suit for cancellation of the release was filed March 1, 1960, nearly three years after the accident. They did not, however, cash a check for $450 representing the balance of the settlement over and above the expense of repairing their automobile.
In the decree under review the chancellor found that the plight of the plaintiffs resulted unilaterally from their own imprudence and not from any mutual mistake of fact justifying an invalidation of the release. We are constrained to agree. The plaintiffs in effect made an improvident guess as to the future consequences of presently known injuries, or simply gave no thought to future possibilities. Such mistake, under the circumstances, was not a mistake remediable at law or in equity.
Liability for delayed or after-discovered effects of presently known injuries resulting from the negligence of another may be validly released by the injured party, and it is generally held that mutual mistake is not a ground for relief therefrom unless it is shown to be a material mistake as to a past or present fact. The weight of authority supports the doctrine that a release of a claim for personal injuries can not be voided merely because the injuries have proved more serious than the releasor, at the time of executing the release, believed them to be. 17 C.J.S. Contracts § 144; 12 Am.Jur., Contracts, § 127; 76 C.J.S. Release, § 25; 117 A.L.R. 1022, 1024(b), Annotation.
In DeWitt v. Miami Transit Company, Fla. 1957, 95 So.2d 898, 901, the court said:
"While a release executed pursuant to a mistake as to a past or present fact may on proper showing be set aside, unknown or unexpected consequences of known injuries will not result in invalidating the release. An erroneous opinion or error of judgment respecting future conditions as a result of present known facts will not justify setting the release aside. * * *"
A justification for the rule is set forth in the same decision immediately following the foregoing quotation:
"* * * If the rule were otherwise no release could be safely accepted in personal injury matters. The end result would be that all such claims would be forced into litigation. Such a conclusion would be directly contrary to the policy of the law favoring amicable settlement of disputes and the avoidance of litigation."
The plaintiffs have relied heavily upon Ormsby v. Ginolfi, Fla.App. 1958, 107 So.2d 272. *263 In that case the plaintiff executed a general release for $90.08 which was the exact amount of the estimated cost of the repairs to her automobile. Approximately a year later she sued to recover for personal injuries. The defendants pleaded the release and moved for summary judgment which was granted. The question on the summary proceedings, as developed by the pleadings and affidavits, was whether or not there was a genuine issue of material fact which might render the release voidable. Although the plaintiff felt "shook up" there were no appreciable indications of any personal injuries as a result of the accident. It later appeared that the plaintiff did have personal injuries allegedly due to the accident. Summary judgment for the defendants was reversed on the ground that the proceedings raised a genuine question as to whether the release was executed under a bona fide mistake of fact.
There are significant distinctions between Ormsby v. Ginolfi, supra, and the present case. In the former case the trial court entered judgment on summary proceedings instead of on full hearing as in the DeWitt case and the instant case. In the Ormsby case the consideration for the release was implicitly limited to property damage since both the plaintiffs and the adjuster clearly assumed that there were no existing personal injuries whatever and the amount paid was exactly the cost of repairing the damaged automobile. In holding that the record on summary proceedings was sufficient to present a genuine question as to whether the release was executed under a bona fide factual mistake, the court said that such holding did "not do violence to the companion rule that unknown or unexpected consequences of known injuries will not invalidate a release." [Fla.App. 1958, 107 So.2d 274].
We are mindful of the unfortunate consequences that sometimes result from the hasty but voluntary executions of general releases of liability. Sympathy, however, must not dictate exceptions to settled rules. It is again noted that the case before us was tried on full hearing in which the chancellor observed the witnesses on direct and cross-examination and was confronted with the same law as presented to us on appeal.
The known neck discomfort and back sprain which had been sustained by Josephine Stiff brought her within the rule of DeWitt v. Miami Transit Company and not Ormsby v. Ginolfi, supra. We find no basis for holding contrary to the findings and conclusions set forth in the decree appealed.
Affirmed.
KANNER, Acting C.J., and SMITH, J., concur.