[L. A. No. 26961. In Bank. Feb. 14, 1963.]

WILLIAM CASEY, Plaintiff and Appellant, v. ROBERT CHARLES PROCTOR, Defendant and Respondent.

Harney, Drummond & Fitzwater and David M. Harney for Plaintiff and Appellant.

Murchison, Cumming, Baker & Velpmen, John Baker and Henry F. Walker for Defendant and Respondent.

PETERS, J.—In this action for personal injuries, defendant alleged as a special affirmative defense that plaintiff had signed a release discharging him from all liability, and that the action was barred. Pursuant to Code of Civil Procedure

section 597, this issue was tried before the case on its merits. After the introduction of evidence, the trial court, on defendant's motion, directed the jury to find, as a matter of law, that the release "is valid and binding and bars plaintiff from any recovery in this action." Plaintiff appeals from the judgment entered upon this directed verdict.

The rules applicable to motions for directed verdict are well settled. (See *Estate of Lances*, 216 Cal. 397, 400 [14 P.2d 768]; *Herrera* v. *Southern Pac. Co.*, 155 Cal.App.2d 781, 783 [318 P.2d 784]; 2 Witkin, Cal. Procedure (1954) Trial, § 125, pp. 1857-1858.) ▉ The question presented is whether the record discloses substantial evidence that would support a holding that the release does not conclusively bar the action. (*Raber* v. *Tumin*, 36 Cal.2d 654, 656 [226 P.2d 574].) If so, then the judgment must be reversed and the issue presented to the jury. (See *Mairo* v. *Yellow Cab Co.*, 208 Cal. 350 [281 P. 66].)

On April 18, 1959, plaintiff was driving in Los Angeles when traffic in front of him stopped. After plaintiff also stopped, the car owned and driven by defendant ran into the rear of plaintiff's car, pushing it forward into another car. Plaintiff did not see defendant's car prior to the accident and could not have avoided the collision. Defendant's negligence is conceded.

Four days after the accident, Mr. Carrigan, a representative of plaintiff's collision insurer, Motors Insurance Corporation, with whom plaintiff carried a $100 deductible collision policy, met with plaintiff to discuss a claim for the damage to plaintiff's car for which an estimate of $490.90 had been obtained. Carrigan also helped plaintiff fill out a "Report of Accident" which had been sent to plaintiff by defendant's liability insurer, Hardware Mutual Casualty Company. One question on this form was whether plaintiff had been injured in the accident, and "no" was written in answer. Carrigan testified that during the hour long interview plaintiff showed no signs of distress and appeared to be uninjured. No discussion of injuries was had. At the conclusion of the interview, plaintiff assigned to Motors any claim he might have against defendant or Hardware for damage to property insured by Motors, and promised to execute any document necessary to assist Motors in collecting on that claim. In return, Motors was to reimburse plaintiff for the deductible amount of the policy if it were able to collect it from defendant or Hardware.

Six days after the accident the completed "Report of Accident" was received by Hardware. Apart from the notation in this report stating that he had not been injured, plaintiff did not discuss with either defendant or Hardware the question or possibility of personal injuries. Thereafter, plaintiff's car was repaired, Motors paying all but $100 of the cost; plaintiff paying the remainder. Motors then sent a notice of subrogation to Hardware seeking reimbursement for the $490.90 repair bill. Hardware, whose representative testified that he believed his company was liable for all damages suffered by plaintiff in the accident, in turn, sent a release form to Motors for plaintiff's signature. Motors forwarded the release to plaintiff by mail, but plaintiff does not recollect receiving it or returning it. Nor does he remember whether or not he read it. However, he remembers signing it and acknowledges that the signature on it is his. Plaintiff does not remember how long he had the release in his possession, although it appears that he retained it for a period of nine days before returning it. The release provides:

"RELEASE OF ALL CLAIMS

"FOR AND IN CONSIDERATION of the payment to me . . . of . . . $490.90 . . . I . . . hereby release, acquit and forever discharge . . . [defendant] of and from any and all actions, causes of action, claims, demands, damages, costs, loss of services, expenses and compensation, on account of, or in any way growing out of, any and all known and unknown bodily injuries and property damage resulting or to result from an accident that occurred on or about the 18th of APRIL 1959, at or near 9065 ROSCRANS." Above plaintiff's signature appears the warning: "CAUTION! READ BEFORE SIGNING." The release is dated the 11th of May, 1959, 23 days after the accident.

On receipt of the executed release, Hardware sent a draft for $490.90 to Motors, who forwarded it to plaintiff for his endorsement. Plaintiff endorsed and returned the draft to Motors who later reimbursed him for the $100 he had paid the repair shop.

Plaintiff testified that for ". . . quite a few days after the accident I was completely shook up. . . . My nerves were completely shattered. . . ." He was forced to reduce his work load and could neither read easily nor concentrate. As a result of the accident he was sore and his muscles "hurt,"

but he thought these complaints would quickly disappear. He did not think that he had been injured. At the time he signed the release, he had not sought medical care. Plaintiff testified categorically that in executing the release he did not intend to release anyone from a claim for personal injuries.

On July 2, 1959, almost two months after he had signed the release, plaintiff, for the first time, sought medical attention. His doctor testified, without contradiction, that as a result of the accident plaintiff suffered a compression fracture of the sixth cervical vertebra resulting in nerve root compression and a ruptured disc between the third and fourth cervical vertebrae. As a result of these injuries, a laminectomy and vertebrae fusion are required. The estimated special damages are $3,000. In addition, plaintiff will have almost continuous pain until the injured portion of the neck can be immobilized.

Thus, there is substantial evidence that plaintiff was seriously injured as a proximate result of defendant's negligence; that the injuries for which compensation is now sought were unknown and unsuspected by the parties at the time the release was executed; that there were no negotiations leading to any settlement; that there were no discussions concerning personal injuries or the possibility of their existence; that plaintiff received no compensation for any personal injuries; and that plaintiff did not intend to execute a release for personal injuries. It should be emphasized that when the release was signed, neither party to it had any reason to believe that personal injuries had been suffered. Four days after the accident plaintiff had reported that he had suffered no injuries, which report was received by Hardware six days after the accident. Later, based on that report or its own investigation, and upon the demand of Motors for property damage only, the release was prepared and sent. The release, however, by its express terms, included a discharge of liability for unknown as well as known injuries.

Plaintiff's initial contention is that he mistakenly believed that the release related only to property damage claims and that its scope should therefore be limited to a discharge of liability for the damage to his car. Alternatively, it is contended that this mistaken belief affords grounds for rescission of the release.[1] Secondly, plaintiff contends that the release

[1]After the introduction of all evidence, and while motions for directed verdict were under submission to the trial court, plaintiff deposited $100 with the clerk of the court, this being the amount that he had received

is a "general release" within the meaning of Civil Code section 1542, and therefore does not extend to claims for injuries unknown at the time it was executed. Finally, plaintiff contends that he should be allowed to rescind the entire release on the ground of mistake as to existence of any injuries at the time the release was executed.

It has often been held that if the releaser was under a misapprehension, not due to his own neglect,[2] as to the nature or scope of the release, and if this misapprehension was induced by the misconduct of the releasee, then the release, regardless of how comprehensively worded, is binding only to the extent actually intended by the releaser. (*Raynale* v. *Yellow Cab Co., supra,* 115 Cal.App. 90 [fraud]; *Meyer* v. *Haas, supra,* 126 Cal. 560 [misrepresentation as to the contents of the release]; *Mairo* v. *Yellow Cab Co., supra,* 208 Cal. 350 [same]; *M. G. Chamberlain & Co.* v. *Simpson,* 173 Cal.App.2d 263, 276 [343 P.2d 438] [deception]; *Jordan* v. *Guerra, supra,* 23 Cal.2d 469 ["overreaching"]; *Smith* v. *Occidental etc. Steamship Co., supra,* 99 Cal. 462 [same]; *Muir* v. *Cheney Bros.,* 64 Cal.App.2d 55, 60-61 [148 P.2d 138] [same]; *Wetzstein* v. *Thomasson, supra,* 34 Cal.App.2d 554 [same]; *Tyner* v. *Axt, supra,* 113 Cal.App. 408 [same].) Under such circumstances it is unnecessary to effect a rescission of the release, and no question of notice to rescind or of restoration of consideration received arises. (E.g., *Garcia* v. *California Truck Co.,* 183 Cal. 767, 770 [192 P. 708]; *Wetzstein* v. *Thomasson, supra,* at p. 560.)

This rule does not here apply. There is no evidence of any fraud, misrepresentation, deception, overreaching, or other unfair conduct on the part of either the defendant or

from Hardware, defendant's liability insurer. After the directed verdict had been granted in favor of defendant, this amount was returned to plaintiff.

[2] It has been held that the misapprehension was not due to the neglect of the releaser when he was unable to read the release (*Meyer* v. *Haas,* 126 Cal. 560 [58 P. 1042]; *Mairo* v. *Yellow Cab Co., supra,* 208 Cal. 350), when the release was presented to and signed by the releaser during preparation for the funeral of his son (*Jordan* v. *Guerra,* 23 Cal.2d 469 [144 P.2d 349]), when the release was presented to the releaser within a few hours after the accident when she was still nervous and upset (*Raynale* v. *Yellow Cab Co.,* 115 Cal.App. 90 [300 P. 991]), when the release was presented to the releaser when he was still in the hospital suffering from injuries sustained in the accident (*Smith* v. *Occidental etc. Steamship Co.,* 99 Cal. 462 [34 P. 84]; *Tyner* v. *Axt,* 113 Cal.App. 408 [298 P. 537]), and when the release was presented to the releaser soon after the accident while he was still confined to bed, though not in the hospital (*Wetzstein* v. *Thomasson,* 34 Cal.App.2d 554 [93 P.2d 1028]).

Hardware in obtaining the release. The release was sent through the mail and plaintiff had no personal dealings with either of them.

 It is true that even where, as here, there is no evidence of misconduct on the part of the releasee, some courts recognize the rule that one may rescind a release on the basis of a nonnegligent unilateral mistake as to its contents. (*Ricketts* v. *Pennsylvania R. Co.* (2d Cir. 1946) 153 F.2d 757; *Moak* v. *American Automobile Ins. Co.* 242 La. 160 [134 So.2d 911]; *Conley* v. *Fuhrman* (Mo.) 355 S.W.2d 861; *Pimpinello* v. *Swift & Co.*, 263 N.Y. 159 [170 N.E. 530]. See Note 164 A.L.R. 402, 409; Havighurst, *Problems Concerning Settlement Agreements* (1958) 53 Nw. U.L.Rev. 283, 304-308.) If it be assumed that this is the rule in California (see Civ. Code, §§ 1577, 1689, subd. (b)(1); *M. F. Kemper Constr. Co.* v. *City of Los Angeles*, 37 Cal.2d 696, 701 [235 P.2d 7]; 1 Witkin, Summary of Cal. Law (7th ed. 1960) Contracts, § 128, pp. 137-138), the question is then whether plaintiff's failure to read the release, or, if he did read it, his failure to understand that it extended also to claims for personal injuries was, as a matter of law, the neglect of a legal duty (see Civ. Code, § 1577).

Plaintiff contends that he was justified in assuming that the release related only to property damage because he made no claim for personal injuries; because no negotiations were carried out with regard to personal injuries — in fact there were no negotiations at all between plaintiff and the defendant or his insurance carrier; and because the consideration for the release was in the exact amount of the property damage. On the other hand, there is nothing in the record to indicate that at the time he signed the release he was suffering from any disability which would prevent him from giving it his full attention or which would prevent him from exercising his independent judgment. It was signed in his home when he was not subjected to any disabling pressure. Although there is evidence that plaintiff had difficulty reading and concentrating after the accident, there is no contention that he was unable to read, or prevented from reading, the release before signing it. He retained it in his possession for nine days and did not sign it until three weeks after the accident. And, as defendant properly points out, even a cursory reading of the release would indicate that it relates to claims for personal injuries as well as for property damage.

Under these circumstances, the failure of plaintiff to rec-

ognize that the release included a discharge of liability for personal injuries has been held to be attributable to his own neglect, both under California authority (*Hawkins* v. *Hawkins*, 50 Cal. 558, 560; *Mathews* v. *Pacific Mut. Life Ins. Co.*, 47 Cal.App.2d 424, 430 [118 P.2d 10] ; *Rogers* v. *Atchison etc. Ry. Co.*, 38 Cal.App. 343 [176 P. 176] ; see *Haviland* v. *Southern Cal. Edison Co.*, 172 Cal. 601 [158 P. 328] ; *Dobler* v. *Story* (9th Cir. 1959) 268 F.2d 274 [California law] ; but see *Davis* v. *Diamond Carriage etc. Co.*, 146 Cal. 59 [79 P. 496]) and in the vast majority of other jurisdictions. (E.g., *Clark* v. *Brewer* (Ky.App.) 329 S.W.2d 384; *McFall* v. *Conner*, 81 Ohio L.Abs. 499 [162 N.E.2d 876] ; *Davis* v. *Davis*, 256 N.C. 468 [124 S.E.2d 130] ; *Campbell* v. *Campbell*, 145 W.Va. 245 [124 S.E.2d 345] ; *Wheeler* v. *White Rock Bottling Co. of Oregon*, 229 Ore. 360 [366 P.2d 527] ; *Morris* v. *Millers Mutual Fire Ins. Co. of Texas* (Tex.Civ.App.) 343 S.W.2d 269; *Page* v. *Means* (N.D.W.Va. 1961) 192 F.Supp. 475. See Havinghurst, *Problems Concerning Settlement Agreements* (1958) 53 Nw.U.L.Rev. 283, 306. Contra *Moak* v. *American Automobile Ins. Co.*, *supra*, (La.) 134 So.2d 911; *Conley* v. *Fuhrman*, *supra*, (Mo.) 355 S.W.2d 861.) It must be concluded, therefore, that plaintiff's mistaken belief that the release related only to claims for property damage does not entitle him to rescind the release under the circumstances of this case.

This leaves for consideration the question of whether section 1542 of the Civil Code is applicable. Plaintiff contends that that section prevents the release from conclusively barring this action because the injuries for which compensation is now sought were unknown and unsuspected at the time the release was executed. This is the basic question presented in this case. Civil Code section 1542 provides that, ''A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.'' In the instant case, there is substantial evidence that plaintiff did not know or suspect that he had suffered a broken cervical vertebra and a ruptured disc at the time he signed the release; and since the settlement did not include any payment for personal injuries, it is clear that his lack of knowledge materially affected the terms of the settlement. Defendant contends, however, that because the release specifically refers to claims

for unknown injuries it is a "specific" and not a "general" release within the meaning of section 1542.

The leading California case involving an action to recover for later discovered injuries in the face of a release is *O'Meara* v. *Haiden,* 204 Cal. 354 [268 P. 334, 60 A.L.R. 1381]. There, after the plaintiff's son had apparently recovered from injuries sustained in an auto accident, plaintiff executed a release for $250 which purported to " '. . . discharge . . . [defendant] from any and all actions, causes of actions . . . by reason of any damage, loss or injury which heretofore have been or which hereafter may be sustained . . . in consequence of . . . [the] accident. . . .' " (204 Cal. at p. 356.) Thereafter, the boy died from a spleen injury suffered in the accident but which was unknown at the time of the execution of the release. A wrongful death action was filed by plaintiff and the release signed by plaintiff was asserted in defense. It was held that the release did not bar the action, the court reasoning that, since it was a general release, Civil Code section 1542 was applicable and an action for the results of an unknown injury had not, therefore, been discharged. (Accord, *Backus* v. *Sessions,* 17 Cal.2d 380, 387 [110 P.2d 51]; *Gambrel* v. *Duensing,* 127 Cal.App. 593, 604 [16 P.2d 284].)

Although the plaintiff in *O'Meara* did serve notice of rescission and offered to return the consideration prior to trial (but after the commencement of the action), it was held that rescission of the release was not a prerequisite to the action. This court stated, at page 363 of 204 Cal., "As to the damages sustained by the father for the death of his son due to defendant's negligence we have held that the release did not cover any damages sustained by reason of the boy's death. It only extended to damages for those injuries known to the parties at the time of executing it. The present action was by the instructions of the trial court limited to such damages as the father may have sustained by reason of his son's death. As plaintiff herein has not recovered any damages sustained by him for injuries, which were covered by the release, it was not necessary for him to rescind said release and restore the consideration received therefor before the institution of this action." (See also, *Backus* v. *Sessions, supra,* 17 Cal.2d 380, 391-392. Cf. *Sime* v. *Malouf,* 95 Cal.App.2d 82, 111 [212 P.2d 946, 213 P.2d 788].)

If Civil Code section 1542 as interpreted by *O'Meara* v. *Haiden, supra,* 204 Cal.354, is here applicable, then the

release did not, as a matter of law, bar the instant action, and the timeliness of the notice of rescission and offer of restoration is immaterial.

Apparently the first indication that section 1542 might not be applicable to a release which specifically referred to claims for unknown injuries is found in a dictum in *Dingman* v. *J. E. French Co.*, 3 Cal.App.2d 512, 514-515 [39 P.2d 826]. Shortly thereafter, *Berry* v. *Struble*, 20 Cal.App.2d 299 [66 P.2d 746], was decided, and since then several courts have followed it holding that such a release is not a "general release." (See *Kostick* v. *Swain*, 116 Cal.App.2d 187 [253 P.2d 531]; *Suckow Borax Mines Consolidated* v. *Borax Consolidated* (9th Cir. 1950) 185 F.2d 196, 206-207 [California law].)

In *Berry*, the plaintiff, under the mistaken belief that her injured leg had healed, signed a release which extended to claims for known and unknown injuries for a consideration in the amount of property damage suffered in an accident. Thereafter, her condition worsened and she was ultimately confined to walking on crutches. In an action for the later discovered injuries, a nonsuit was affirmed on the ground that the release barred the action. Plaintiff's contention that section 1542 was applicable was rejected. The *O'Meara* case was distinguished on the ground that the release there involved did not specifically refer to claims for unknown injuries; it discharged claims only for injuries which heretofore have been or which hereafter may be sustained. The specific basis for this distinction was, however, that parties to a dispute should be able to settle for unknown claims as well as for known claims, and that section 1542 did not express a public policy contrary to this concept. It was stated at pages 302-303 of 20 Cal.App.2d, "There does not appear to be any principle of public policy which, in the absence of fraud or duress, would forbid parties who are laboring under no disability from releasing for a consideration all claims arising from a particular accident, whether the injuries be known or unknown. . . . Other things being equal, it would seem to be merely a question of intent, and this, if sufficiently expressed, should be conclusive. . . . [S]ection 1542 does not attempt to limit the right. . . . [W]e . . . place our decision on the ground that the clear intention of the parties was to compromise and release all claims, known or unknown, growing out of the accident; . . ." As this quotation indicates, the decision held that the recital

in the release as to unknown injuries is conclusive on the issue of intent to make such a settlement.

The underlying theory of the *Berry* case is that if it should be held that section 1542 is applicable to a settlement which specifically refers to unknown claims then, under no circumstances could parties validly contract for a settlement of unknown injuries. If this underlying concept is wrong, then the decision is wrong and should be disapproved.

A study of the history and purposes of the section demonstrates that the court in *Berry* misconstrued section 1542. That section, which is substantially unchanged since enacted in 1872 (see Code Amends. 1873-74, ch. 612, p. 241, § 189), was copied from section 742 of the Field Civil Code of 1865. The Field Code cited as the source of the rule the case of *Lyall* v. *Edwards,* 6 H. & N. 337, 158 Eng.Rep. 139 (Ex. 1861). The California Code Commissioners cite the same case to explain the reason, purpose and intent of section 1542. (1 Civil Code of California (Ann. 1872) p. 452.)³ In *Lyall,* a release ``. . . from all and all manner of actions, cause of action and suit . . . obligations, debts . . . claims and demands whatsoever . . . then had, or thereafter should or might have . . .'' (158 Eng.Rep. at p. 141) was asserted in defense to an action in trover for the conversion of certain goods. At the time the release was executed, the plaintiff was unaware of the conversion and did not intend to release the defendant therefrom. There was, however, a known contractual obligation existing. Further, had plaintiff known of the conversion, he would not have executed the release. Pollock, C.B., holding that the release did not bar the trover action, stated, ``. . . a release cannot apply, or be intended to apply to circumstances of which a party had no knowledge at the time he executed it, and . . . if it is so general in its terms as to include matters never contemplated, the party will be entitled to relief.'' (158 Eng.Rep. at p. 143.) Martin, B., was of the opinion that it was a jury question as to whether an unknown claim for conversion was intended to be included within the terms of the release. Wilde, B., was of the opinion that release could not apply ``to something of which the party executing it was ignorant. . . .'' (158 Eng.Rep. at p. 144.)

---

³The code commissioners' notes are entitled to great weight in construing code sections (*Baranov* v. *Scudder,* 177 Cal. 458, 465 [170 P. 1122]; *O'Hara* v. *Wattson,* 172 Cal. 525, 534 [157 P. 608]; see cases 45 Cal. Jur.2d, Statutes, § 172, p. 673).

 It therefore appears beyond reasonable doubt that Civil Code section 1542 was intended by its drafters to preclude the application of a release to unknown claims in the absence of a showing, apart from the words of the release of an intent to include such claims. None of the opinions in *Lyall* relied on the precise terms of the release; they emphasized as the controlling factor the fact that the claim was unknown. And, in fact, the term ''general'' was referred to only incidentally by Pollock and without any apparent intention of creating a distinction between a ''general,'' and its converse, a ''specific,'' release. The term was used to describe a release which was phrased broadly enough to include unknown claims. The converse of Pollock's ''general'' release would be a release which does not extend to unknown claims. It would seem, therefore, that nothing in the rule requires or supports the distinction drawn in the *Berry* case.

 Furthermore, the interpretation placed upon section 1542 by *Berry* and subsequent cases following it, including those which, in dicta, indicate that the section may be waived by merely placing a clause in the release to that effect (e.g., *Pacific Greyhound Lines* v. *Zane* (9th Cir. 1947) 160 F.2d 731, 736), have largely nullified the protection section 1542 was enacted to provide. (See 1 Witkin, Summary of Cal. Law (7th ed. 1960) pp. 335-336.) Indeed, a paradox of the *Berry* case is that by first restricting the application of section 1542, and then by holding that the recitals in the release are conclusive with regard to the intent of the parties, California, which is one of the few states to enact a special provision for the protection of releasers from unintended releases (see Mont. Rev. Code, tit. 58, § 510 (1947); N.D. Cent. Code Ann., § 9-13-02), in fact affords less protection than the majority of other jurisdictions provide without a statute and by judicial decision.

This interpretation of section 1542 does not prevent all settlements for unknown claims. It was never intended to do so. Rather, its purpose was to prevent the mere recital in the release to that effect from barring a claim for injuries later discovered in the absence of a showing of a conscious understanding that if injuries were suffered which had not yet manifested themselves, they too would be discharged by the release. Certainly a release of ''all claims heretofore or hereafter arising'' out of an accident is sufficiently broad to include claims for unknown injuries. (*O'Meara* v. *Haiden, supra,* 204 Cal. 354.) While the specific inclusion of

a discharge of claims for "injuries known and unknown" perhaps adds weight to the argument that such claims were intended to be discharged by the release, it does not add to the scope of the release.[4] The question remains as one of fact whether the releaser actually intended to discharge such claims. If the evidence, independent of the words of the release, indicates that the parties have consciously contracted in reference to unknown claims, the release is, of course, binding.

Insofar as *Berry* v. *Struble, supra,* 20 Cal.App.2d 299, and the cases following it indicate that section 1542 does not preclude a binding settlement for unknown injuries, they are correct. But insofar as those cases make application of section 1542 depend upon the wording of the release, they are incorrect and are disapproved; the distinction drawn between "all claims" and "claims for unknown injuries" was based upon the incorrect assumption that application of section 1542 in the latter case would prevent parties from consciously making such a settlement.

Plaintiff also contends, independently of section 1542, that the existence of unknown injuries at the time the release was executed affords grounds for rescission.

In the absence of statutory provision, the majority of jurisdictions permit a releaser under proper circumstances to avoid a release, regardless of its terms, where it appears that unknown injuries existed at the time it was executed. (*Doud* v. *Minneapolis Street Ry. Co.* 259 Minn. 341 [107 N.W.2d 521]; *Ruggles* v. *Selby,* 25 Ill.App.2d 1 [165 N.E.2d 733]; *McGuirk* v. *Ross,* 53 Del. 141 [166 A.2d 429]; *Crane Co.* v. *Newman* (Ind.App.) 37 N.E.2d 732; *Doyle* v. *Teasdale,* 263 Wis. 328 [57 N.W.2d 381]; *Reed* v. *Harvey,* 253 Iowa 10 [110 N.W.2d 442]; *Parker* v. *United Tank Truck Rental, Inc.,* 21 Misc.2d 246 [290 N.Y.S.2d 250]; *Farmers Mutual Automobile Ins. Co.* v. *Buss* (D.Kan. 1960) 188 F.Supp. 895 [Kansas law]; *Graham* v. *Atchison, T. & S.F. Ry. Co.* (9th Cir. 1949) 176 F.2d 819 [F.E.L.A. action]. See Note 71 A.L.R.2d 82, 88; 6 Corbin, Contracts (1962) § 1292, pp. 182-183; 5 Williston, Contracts (rev.ed. 1937) § 1551, pp. 4347-4349. Contra *O'Donnel* v. *Langdon,* 170 Ohio St. 528 [166 N.E.2d 756]; *Kennedy* v. *Bateman,* 217 Ga. 458 [123 S.E.2d 656]; *Wheeler* v. *White Rock Bottling Co. of Oregon,*

---

"'. . . a distinction between 'all injuries' and 'known and unknown injuries' seems unjustified. Since one is covered by section 1542, both should be." (Comment (1954) 42 Cal.L.Rev. 161, 170, fn. 55.)

*supra*, (Ore.) 366 P.2d 527.) Prior to *Berry* v. *Struble*, *supra*, 20 Cal.App.2d 299, which also held that the release could not be rescinded on the ground of later discovered injuries, this was apparently the rule in California. (*Hudgins* v. *Standard Oil Co.*, 136 Cal.App. 44 [28 P.2d 433]. See *Touhy* v. *Owl Drug Co.*, 6 Cal.App.2d 64, 68 [44 P.2d 405].) Although most of the decisions are couched in terms of "mutual mistake," this rationale does not satisfactorily explain the case holdings. Invariably, the release has been drafted by the releasee in terms sufficiently broad to include a discharge of liability for unknown injuries. While the releasee is ignorant of the existence of injuries, he is also indifferent to their existence. He seeks a discharge of liability in any event, and it cannot be said that he would not have entered into the release had he actually known of them.

There are competing policies involved. On the one hand, the policy of the law is to encourage out-of-court settlements. To further this policy the parties to a dispute should be encouraged to negotiate settlements and to enter into releases. In the absence of unfair conduct on the part of the releasee, the law should extend its protection to the stability of the transaction by holding the parties to the express terms of the release. If later discovered injuries may be asserted, no release would be final and free from attack until the statute of limitations has run. (See e.g., *Wheeler* v. *White Rock Bottling Co. of Oregon, supra*, (Ore.) 366 P.2d 527, 530; *O'Donnel* v. *Langdon, supra*, (Ohio St.) 166 N.E.2d 756, 758; *Stiff* v. *Newman* (Fla.App.) 134 So.2d 260, 262. Cf. *Alderman* v. *Bivin*, 233 S.C. 545 [106 S.E.2d 385].) On the other hand, if the releaser is bound by the literal terms of the release, it has been recognized that he is left to suffer personal injuries without compensation, while the releasee, who usually is an insurer, has received a windfall in avoiding liability for a risk it has been paid to assume. (See e.g., *Denton* v. *Utley*, 350 Mich. 332 [86 N.W.2d 537].) Furthermore, the long-term effects of damage to human tissue are extremely difficult to anticipate and the opportunity for error is great. (See e.g., *Wheeler* v. *White Rock Bottling Co. of Oregon, supra*, at p. 530; *Clancy* v. *Pacenti*, 15 Ill.App.2d 171 [145 N.E.2d 802, 805, 71 A.L.R.2d 77].) Finally, stress has been laid upon the fact that as between the releaser and the releasee, a large disparity of bargaining power is present; usually the release is a prepared form drafted by experts and presented in a take it or leave it manner, while the

releaser is ordinarily an individual without any knowledge of legal documents or assistance from legal counsel. (*Reed* v. *Harvey, supra,* (Iowa) 110 N.W.2d 442, 446; *Wheeler* v. *White Rock Bottling Co. of Oregon, supra,* at p. 530; *Clancy* v. *Pacenti, supra,* at p. 805 [145 N.E.2d]. See Comment (1949) 1 Stan.L.Rev. 298.) The fact that these considera- tions warrant special treatment of releases for personal injuries has long been recognized.[5] (See 9 Wigmore, Evidence (3d ed. 1940) § 2416, p. 55; 5 Williston, Contracts (rev.ed. 1937) § 1551, pp. 4347-4349.)

The majority of jurisdictions have adopted the sounder doctrine. For that reason, insofar as *Berry* v. *Struble, supra,* 20 Cal.App.2d 299, holds that even apart from the applica- tion of section 1542 the release cannot be avoided, it and the cases following it on this point are disapproved.

█ Under the majority rule, however, a release may not *ipso facto* be avoided upon the ground of later discovered injuries. The essence of the rule is that the wording of the release is not conclusive; it is a question of fact whether the parties to a release actually intended to discharge such liability. As was stated in *Denton* v. *Utley, supra,* (Mich.) 86 N.W.2d at pages 542-543, ''We would not be understood as holding . . . that it is not within one's competence to say 'I may have serious injuries I know nothing about. As to them I will take my chances.' This, one may do. He may, if he wishes, release his rights and assume the risk of future disablement for $1 'and other good and valuable considera-tion,' or $50, or, indeed, an old beaver hat. In other words, it is possible that a reasonable, intelligent person, in full possession of all his faculties, and with knowledge that he may have serious injuries, will release a tortfeasor from all liability in return for a trifling sum of money. If such has in truth been the intention and the agreement we will not disturb the parties.'' (See also *Doud* v. *Minneapolis Street Ry. Co.,*

[5]The peculiar policy considerations relevant to releases for personal injuries have been noted by the legislatures of several states which have enacted statutes permitting a release involving personal injuries to be avoided at the will of the releaser if executed within a specified period after the injury was sustained. North Dakota Century Code Annotated, § 9-08-08, for example, provides, ''Every settlement or adjustment of any cause of action for damages on account of any personal injuries received, whether death ensues or not to the person injured, and every contract of retainer or employment to prosecute such an action, shall be voidable if made within thirty days after such injury. . . .'' (See also Idaho Code, § 29-113; Conn.Gen.Stat. (1958) § 52-572a; Maine Rev.Stat. (1954) ch. 137, § 49a. For suggested similar legislation in California, see Comment (1949) 1 Stan.L.Rev. 298.)

*supra,* (Minn.) 107 N.W.2d 521, 524; *Doyle* v. *Teasdale, supra,* (Wis.) 57 N.W.2d 381, 390; *Clancy* v. *Pacenti, supra,* (Ill. App.) 145 N.E.2d 802, 805; *Crane Co.* v. *Newman, supra,* (Ind.App.) 37 N.E.2d 732, 739.) ▬ Whether a release bars an action for later discovered personal injuries is a question of fact and depends upon whether it was "knowingly" made. (*Denton* v. *Utley, supra,* at p. 541. [86 N.W.2d].) Whether there is substantial evidence that it was not will depend upon the amount of consideration received compared with the risk of the existence of unknown injuries (*Denton* v. *Utley, supra,* at p. 543 [86 N.W.2d]; *Goodman* v. *Missouri Pacific R.R. Co.* (Mo.) 312 S.W.2d 42, 48; *Ruggles* v. *Selby, supra,* (Ill.App.) 165 N.E.2d 733, 743; *Crane Co.* v. *Newman, supra,* at p. 739; *Montgomery Ward & Co.* v. *Callahan* (10th Cir. 1942) 127 F.2d 32, 35. See Note 71 A.L.R.2d 82, 165. But see *Darensbourg* v. *Columbia Casualty Co.* (La.App.) 140 So.2d 241) the presence of bargaining and negotiation leading to the settlement (e.g., *Denton* v. *Utley, supra,* at p. 543 [86 N.W.2d]) the closeness of the issue of liability (*Reed* v. *Harvey, supra,* (Iowa) 110 N.W.2d 442, 447; *Schoenfeld* v. *Buker,* 262 Minn. 122 [114 N.W.2d 560]; *Ruggles* v. *Selby, supra,* at p. 743; Note 71 A.L.R.2d 82, 167) whether the subject of personal injuries was discussed (see *Seaboard Ice Co.* v. *Lee,* 199 Va. 243 [99 S.E.2d 721]; *McGuirk* v. *Ross, supra,* (Del.) 166 A. 429; but cf., *Page* v. *Means, supra,* (N.D.W.Va. 1961) 192 F.Supp. 475) and the reasonableness of the contention that the injuries were in fact unknown at the time the release was executed (*Doyle* v. *Teasdale, supra,* (Wis.) 57 N.W.2d 381, 388; *Schmidtke* v. *Great Atlantic & Pacific Tea Co.,* 236 Wis. 283 [294 N.W. 828, 832]; *Ormsby* v. *Ginolfi* (Fla.App.) 107 So.2d 272, 274; Note 71 A.L.R.2d 82, 148).

▬ If these factors be applied to the instant case, it is clear that under the rule prevailing in the majority of jurisdictions there is substantial evidence to support a holding that plaintiff may avoid the release. Here, no consideration was paid for personal injuries, there were no negotiations leading to the settlement, the risk of the existence of unknown injuries was never discussed, there is substantial evidence that plaintiff's belief that he had not suffered personal injuries was reasonable, and there is little doubt as to defendant's liability.

Since the test of whether the releaser consciously discharged claims for unknown injuries is the same when the release

falls within the application of Civil Code section 1542, these factors are equally relevant to a determination of whether there is substantial evidence to support a holding that section 1542 prevents the release in the instant case from barring this action. Therefore, the case should have gone to the jury on the issue of plaintiff's intent.

Under the majority rule, and in the absence of a statute like Civil Code section 1542, the releaser is generally required to disaffirm the release by tendering back the consideration received before recovery for later discovered injuries will be allowed. (Note 134 A.L.R. 6, 8. See Havighurst, *Problems Concerning Settlement Agreements* (1958) 53 Nw.U.L.Rev. 283, 308-313.) The rationale is that it is unfair to allow the releaser to affirm the part of the release favorable to him while disaffirming the unfavorable portion. (See Note 134 A.L.R. 6, 9.) The requirement is consistent with the usual contention of both parties that they would not have entered into the release at all had they known, on the one hand, of the existence of certain injuries, and, on the other, that a claim for such injuries was not barred by the release. But it is apparent that the presence of any such element of unfairness depends upon the circumstances of each case. Thus, where the issue of liability is seriously disputed, the failure to require disaffirmance of the release may well result in an injustice to the releasee. The contrary is true where the circumstances indicate that the issue of liability is likely to be decided in favor of the releaser. The courts, therefore, have been very liberal in allowing the releaser to meet any requirement of notice of rescission or of timely tender back of the consideration. It is generally held that bringing suit for the later discovered injuries is sufficient notice and that a tender even after the action has been filed is timely, although it is usually stated that it must be prior to trial. (See Note 53 A.L.R.2d 757, 769-775.) It has been recognized, and rightly so, that the important question is whether the releasee has been prejudiced by any delay. (Havighurst, *Problems Concerning Settlement Agreements* (1958) 53 Nw.U.L.Rev. 283, 312-313.) Taking these considerations into account, both New York (N.Y. Civil Practice Act, § 112-g; *Ciletti* v. *Union Pac. R. Co.* (2d Cir. 1952) 196 F.2d 50) and California (Civ. Code, §§ 1691, 1693) have modified the requirements of notice and tender by statute. Civil Code section 1691 was amended in 1961 to provide that, "When notice of rescission has not otherwise been given or an offer to restore

the benefits received under the contract has not otherwise been made, the service of a pleading in an action . . . that seeks relief based on rescission shall be deemed to be such notice or offer or both." (Stats. 1961, ch. 589, p. 1734, § 2.) In the same year section 1693 was enacted to provide:

"When relief based upon rescission is claimed in an action or proceeding, such relief shall not be denied because of delay in giving notice of rescission unless such delay has been substantially prejudicial to the other party.

"A party who has received benefits by reason of a contract that is subject to rescission and who in an action or proceeding seeks relief based upon rescission shall not be denied relief because of a delay in restoring or in tendering restoration of such benefits before judgment unless such delay has been substantially prejudicial to the other party; but the court may make a tender of restoration a condition of its judgment." (Stats. 1961, ch. 589, p. 1735, § 4. See 1 Witkin, Summary of Cal. Law (7th ed. 1960) Contracts [1961 Supp., § 307B, p. 43].)

Were it necessary for plaintiff here to disaffirm the release prior to recovery it would be very doubtful that his offer to restore the consideration was timely; the above amendments to the Civil Code had not been enacted when this action came to trial. (See 1 Witkin, Summary of Cal. Law (7th ed. 1960) pp. 330-333.) However, since we have held that the application of section 1542 requires a reversal of the judgment, it is unnecessary to decide this point.

The judgment based on the directed verdict is reversed.

Gibson, C. J., Traynor, J., Tobriner, J., and Peek, J., concurred.

McCOMB, J.—I dissent. I would affirm the judgment for the reasons expressed by Mr. Presiding Justice Shinn in the opinion prepared by him for the District Court of Appeal in *Casey* v. *Proctor* (Cal.App.) 22 Cal.Rptr. 531.

Schauer, J., concurred.

Respondent's petition for a rehearing was denied March 13, 1963. Schauer, J., and McComb, J., were of the opinion that the petition should be granted.