Herbert, J.
Defendant presents one issue to this court for determination: Whether the setting aside of the release was contrary to law. No controversy exists between the parties as to the jury’s finding of liability or'its assessment of damages.
Defendant places great emphasis on the case of O’Donnel v. Langdon (1960), 170 Ohio St., 528. Eesearch indicates that this court has had little occasion to consider the legal principles applicable to releases for personal injuries, despite the fact that an overwhelming number of sister states have been so concerned. It is the opinion of this court that an analysis of this area of the law is needed in Ohio. As a consequence, the O’Donnel decision is hereby overruled.
Can equity grant relief where parties executed a release while operating under a mistake of fact? Equity from its inception has had jurisdiction to concern itself with mistakes. 3 Pomeroy, Equity Jurisprudence, 281, Section 838. The equitable remedy of cancellation or rescission of contracts and other *152 instrumente has long been available as a method of granting relief from the consequences of any mistake of fact which is a material element of the transaction. Restatement, Contracts, Section 502; Restatement, Torts, Section 900; 37 Ohio Jurisprudence (2d), 82, Mistake, Accident or Surprise, Section 4.
A general statement of the rule applicable to releases and personal injuries, as followed in other jurisdictions, is as follows :
“A release may be avoided where the releasor can show that it was executed by mutual mistake, as between himself and the releasee, of a past or present fact, material to the release * * * as where there was a mutual mistake as to the nature, extent, or degree of gravity of the releasor’s injury, unless it further appears that parties intended that claims for all injuries, whether known or unknown at the time of the execution of the release, be relinquished.” (Emphasis added.) 76 Corpus Juris Secundum, 645, Release, Section 25.
The most comprehensive analysis of this area of law to date is found in annotation, 71 A. L. R. (2d), 82, 90 (1960). Therein some 29 states are listed which have adopted the above-quoted rule or a facsimile thereof.
Because rescission or cancellation of the release is sought, the spirit of equity is given great emphasis in the application of the above rule. It is required that the release must be fairly and knowingly made. Annotation, 71 A. L. R. (2d), 82, 89. Each case is said to depend on its own facts. Denton v. Utley, 350 Mich., 332, 86 N. W. (2d), 537. It is apparent that the strict terms of the release are not, in many instances, controlling, the releasee cannot circumvent the powers of equity to correct mistakes. Denton v. Utley, supra.
As stated in Casey v. Proctor (1963), 59 Cal. (2d), 97, 378 P. (2d), 579:
“The essence of the rule is that the wording of the release is not conclusive; it is a question of fact whether the parties to a release actually intended to discharge such liability.”
The dispositive inquiry in each case is what did the parties intend? If the facts indicate that the parties intended that all claims for all injuries would be relinquished, the release is not subject to rescission or cancellation in a court of equity.
*153 Certain factors have been judicially recognized as aids whereby the intent of the parties at the time the release was executed may be determined. Stated favorably to the party seeking rescission or cancellation, these factors are: The absence of bargaining and negotiating leading to settlement; the releasee is clearly liable; absence of discussion concerning personal injuries; the contention that the injuries were in fact unknown at the time the release was executed is reasonable; an inadequate amount of consideration received compared with the risk of the existence of unknown injuries (see Casey v. Proctor, supra, and authorities cited therein); haste by the releasee in securing the release (annotation, 71 A. L. R. [2d], 82, 169 [1960]); and the terms of the release exclude the injuries alleged (annotation, 71 A. L. R. [2d], 82, 156 [I960]).
Because intent is a question of fact, it is necessary in each case to examine all the circumstances surrounding the execution of the release.
In the instant case, plaintiff’s automobile, while stopped at a trafficway intersection, was struck in the rear by a truck driven by an employee of the defendant. Plaintiff testified that he experienced a sudden jerk of the head backwards and a sensation of pain during this jerk, and that a soreness existed in his neck and shoulders for a week to ten days following the accident. Plaintiff and the driver examined the damage to the two vehicles, and the driver advised plaintiff to send a bill for any damage to defendant. Plaintiff returned home after completing his business and took some medication to ward off a headache. The day after the accident, the defendant informed plaintiff to have the damage repaired and to forward the bill. Defendant’s office manager, Floyd Arthur, testified that he had no knowledge of any injury to plaintiff other than the stiffness in the neck, as related to Arthur by the employee-driver. Plaintiff expended $20.19 to repair his car and forwarded the bill to defendant. Plaintiff telephoned defendant some time in February, inquiring when defendant was going to pay the bill. On March 4, 1962, Arthur brought a check for $20.19 drawn upon defendant’s account and a general release to plaintiff’s place of employment. Plaintiff admits reading and signing the release and the acceptance of defendant’s check. Approximately sis *154 months after the accident, plaintiff felt a tingling sensation in the fingers of his left hand. This sensation grow progressively worse, and plaintiff, some 12 months after the accident, was operated on for a ruptured cervical disc..
Upon this statement of facts, the trial court found:
‘ ‘ * * * at the time this document, designated a release, was prepared, submitted and signed, there existed a mutual mistake of material fact, namely, that plaintiff had [not] sustained personal injuries as a result of this collision and that but for such mistake of a material fact this document would not have been prepared and submitted by defendant and would not have been signed by plaintiff.
a # # #
‘ ‘ The court * # # finds that at no time were the damages of plaintiff for personal injuries considered by the parties or comprehended as within the terms of the document designated a release * *
This court reaches the same conclusion. Applying the previously stated factors to determine the intent of the parties, it is evident that there was no negotiation prior to settlement and no discussion of personal injuries, the amount of consideration given was the exact amount of property damage, and neither party was aware as to the nature, extent, or degree of gravity of the releasor’s injury.
Therefore, this court finds that the parties were mutually mistaken as to a material fact. There is clear and convincing evidence to support this conclusion, and the judgment of the Court of Appeals is affirmed.

Judgment affirmed.

Taut, C. J., Zimmerman, Matthias, O’Neill, Griuuith and Gibson, JJ., concur.