421 A.2d 835

**Roger VERMILYA, Appellant,**

v.

**NATIONWIDE MUTUAL INSURANCE COMPANY.**

Superior Court of Pennsylvania.

Argued Sept. 12, 1979.

Filed Sept. 19, 1980.

Petition for Allowance of Appeal Denied Dec. 18, 1980.

Norman M. Lubin, Williamsport, for appellant.

Richard A. Gray, Williamsport, for appellee.

Before CERCONE, President Judge, and WATKINS and HOFFMAN, JJ.

CERCONE, President Judge:

This appeal calls into question the legal efficacy of a release for personal injuries sustained by plaintiff–appellant when his motorcycle collided with a vehicle operated by appellee's insured. An equitable action was brought by appellant to set aside this release on the grounds of mutual mistake. The chancellor, finding this case indistinguishable from that of *Emery v. Mackiewicz*, 429 Pa. 322, 240 A.2d 68 (1968), denied appellant's prayer for rescission of the release and entered a decree nisi dismissing the complaint. Appellant's exceptions thereto were denied and final judgment was entered. This appeal followed.

The chancellor's undisputed findings of fact may be summarized as follows: On March 17, 1977, the parties executed a release agreement whereby appellant, in essence, released and discharged appellee for all injuries known and unknown stemming from the accident which occurred on July 3, 1976. The consideration for the release was $15,000.00 and appellee's agreement to reimburse appellant for all medical expenses incurred within one year of the execution of the release. Appellant sustained multiple injuries in the accident the most serious of which appeared to be a compound fracture of the leg accompanied by extensive swelling. Appellant's physician, an orthopedist, was of the opinion that the gross swelling of the leg was a normal concomitant or symptom of the recovery process and, accordingly, authorized appellant to return to work on February 28, 1977.[1] Unfortunately, unbeknownst to the physician and all the parties, the swelling was not simply a normal adjunct of the healing process. Rather, it was subsequently learned that the fracture sustained by appellant in the accident had caused thrombophlebitis—an inflammation of the veins in the leg—a serious[2] condition which would persist in the future and which had not been contemplated by the parties when the release agreement was signed.

Prior to negotiating the release, appellant had consulted with an attorney, but elected to proceed without legal representation. At the final settlement discussions, appellant was accompanied by his wife and uncle, and appellee was represented by its adjuster, who expressed his opinion that the settlement was a very good one in view of the doctor's prognosis of a complete recovery for appellant. The chancellor found that the adjuster was not being deceptive in so expressing himself, but rather that he also was laboring

1. The doctor indicated to both parties that appellant's prognosis was excellent and that he could resume his normal employment without any problem.

2. A cardiovascular and thoracic surgeon who treated appellant in July of 1977 testified that appellant faced a bleak future which would include several operations and multiple disabilities.

under a mistaken belief as to the extent of appellant's injuries.

In addition, the chancellor found that appellant had difficulty in expressing himself and understanding the questions propounded to him; that the negotiations focused upon the extent of appellant's injuries and not liability; and that appellant was not in a position to return the $15,000.00 that he had received from appellee.

Viewing the foregoing facts in light of our Supreme Court's decision in *Emery v. Mackiewicz*, supra, the chancellor felt constrained to deny appellant's request for rescission. In *Emery*, the plaintiff, being of the belief that he had suffered a simple neck muscle strain in an automobile accident, agreed to release defendant for all claims, both known and unknown, in consideration of $350.00. Less than two months after signing the release, the plaintiff discovered that he had in fact suffered a ruptured disc. In plaintiff's trespass action the jury specially found that at the time the release was executed both parties were unaware that plaintiff had sustained a disc injury in the accident. A special verdict was entered in favor of plaintiff and defendants appealed. On appeal, where no single view achieved a majority of the court, it was held that the general and specific release executed by plaintiff was a complete bar to recovery. In so holding, the court explained:

> The above-quoted general and specific release of all claims, demands and actions for bodily injuries could not possibly be clearer or more specific, or more completely all-inclusive and all-embracing. There was no fraud or duress or deception by defendants, and plaintiff was advised by and relied upon his own doctors' diagnosis of his injuries. This particular release was not only general and specific as to the accident but, we repeat, it released the defendants 'from all claims, demands, damages [and] actions ... on account of ... bodily injuries or death resulting or to result from [this] accident ... of every nature and kind whatsoever, and releases claims that are known and unknown, suspected and unsuspected.' If such

a release can be nullified or circumvented, then every written release and every written contract or agreement of any kind, no matter how clear and pertinent and all–inclusive, can be set aside whenever one of the parties has a change of mind or whenever there subsequently occurs a change of circumstances which were unforeseen, or there were after–discovered injuries, or the magnitude of a releasor's injuries was unexpectedly increased, or plaintiff made an inadequate settlement. It would make a mockery of the English language and of the Law to permit this release to be circumvented or held to be nugatory. *Id.*, 429 Pa. at 326, 240 A.2d 68.

Instantly, the chancellor found that the release signed by appellant was substantially similar to the one before the court in *Emery* and, therefore, concluded that "a mere mutual mistake as to the precise nature and extent of injury will not permit rescission of a release agreement which contains the broad language present in this case." Slip opinion at 8.

While one could arguably take issue with the able chancellor's conclusion that the instant case is indistinguishable from *Emery*, we do not believe any useful purpose would be served by attempting to draw subtle distinctions between the cases. We do feel, however, that a re–examination of the principles underlying the court's decision in *Emery* may be in order.

At the outset, it should be recognized that: "While it is often said that the law favors compromise and accordingly the burden of proof is placed on one contending that a release was secured as the result of mistake or misrepresentation as to the nature or extent of the releasor's injuries, and in many jurisdictions such mistake or misrepresentation must be shown by clear and convincing evidence, there nevertheless appears to be a definite trend in most jurisdictions towards granting relief liberally where it is made to appear that an injured party released his claim under a false impression that he was fully informed as to the nature and extent of his injuries." 71 A.L.R.2d 82, 88. Granted, Penn-

sylvania does not stand alone in holding that the terms of the release are controlling. See 71 A.L.R.2d 82, supra. However, it is respectfully suggested that the *Emery* decision fails to take into account what, in our view, is the most decisive factor in this line of cases; namely, the intent of the parties. One of the foremost authorities on the subject has stated: "[W]here a release is given by one injured in an accident and more serious injuries develop than were supposed to exist at the time of the settlement, it is a question of fact whether the parties assumed as a basis of the release the known injuries, or whether the intent was to make a compromise for whatever injuries from the accident might exist whether known or not." 13 Williston on Contracts, § 1551 at 191–92 (3rd ed. 1970). In other words, the focus should not be simply on the wording of the release, but upon the intention of the parties as manifested by all the relevant circumstances. See *Casey v. Proctor*, 59 Cal.2d 97, 28 Cal. Rptr. 308, 378 P.2d 579 (1963). To place conclusive effect upon the language of the instrument is, in our view, tantamount to exalting form over substance. While the concern expressed in *Emery* for preserving the sanctity of written instruments is unquestionably legitimate, equity's objective of accomplishing complete justice is no less important. *Denton v. Utley*, 350 Mich. 332, 86 N.W.2d 537 (1957). The tension between these competing considerations is apparent. As was explained in *Casey v. Proctor*, 59 Cal.2d 97, 28 Cal.Rptr. at 316–17, 378 P.2d at 587–88:

On the one hand, the policy of the law is to encourage out–of–court settlements. To further this policy the parties to a dispute should be encouraged to negotiate settlements and to enter into releases. In the absence of unfair conduct on the part of the releasee, the law should extend its protection to the stability of the transaction by holding the parties to the express terms of the release. If later discovered injuries may be asserted, no release would be final and free from attack until the statute of limitations has run. [Citations omitted.] On the other hand, if the releaser is bound by the literal terms of the release, it has been recognized that he is left to suffer personal injuries

without compensation, while the releasee, who usually is an insurer, has received a windfall in avoiding liability for a risk it has been paid to assume. [Citation omitted.] Furthermore, the long–term effects of damage to human tissue are extremely difficult to anticipate and the opportunity for error is great. [Citation omitted.] Finally, stress has been laid upon the fact that as between the releaser and the releasee, a large disparity of bargaining power is presented; usually the release is a prepared form drafted by experts and presented in a take it or leave it manner, while the releaser is ordinarily an individual without any knowledge of legal documents or assistance from legal counsel. [Citations omitted.] The fact that these considerations warrant special treatment of releases for personal injuries has long been recognized. [Citations omitted.] [3] See also *Denton v. Utley*, supra.

In our opinion, *Emery's* deficiency is that it unduly emphasizes the terminology of the release and fails to give adequate weight to the policy considerations which compel close examination of the parties' actual intent. We would submit that a balance can be struck between these competing policy considerations without favoring one at the expense of the other. In short, neither the language of the release nor the circumstances surrounding its execution should be given conclusive weight. To so hold does not mean that the parties cannot intentionally and expressly agree to a settlement for possible unknown injuries. *Aronovitch v. Levy*, 238 Min. 237, 56 N.W.2d 570 (1953); *Casey v. Proctor*, supra. In other words, "[w]e would not be understood as holding . . . that it is not within one's competence to say, 'I may have serious injuries I know nothing about. As to them I will take my chances.' This one may do." *Denton v. Utley*, 86 N.W.2d at 542. However, we do not believe justice is served by barring an injured party from establishing that, notwithstanding the explicit language of the release, such unknown injuries were not within the contemplation of the

---

**3.** This last consideration is an approximate statement of the doctrine of unconscionability in the law of contracts. See Restatement of Contracts, 2d § 234 (Tent.Dr. # 5).

parties when the release was executed. While the plaintiff's burden would indeed be heavy in the face of such terminology as that used in *Emery*, we would nevertheless afford him the opportunity to meet that obligation by introducing substantial evidence relevant to the parties' actual intent. See, e. g., *Casey v. Proctor,* supra.

■ As we read *Emery*, however, a plaintiff seeking to set aside a release on the grounds of mutual mistake is foreclosed from introducing evidence relevant to intent where the release expressly covers unknown injuries. Accordingly, given the terminology of the release in the present case, we cannot find that the chancellor erred in dismissing appellant's complaint. Nor is it possible to state that appellant would prevail even if he were afforded the opportunity to challenge the terms of the release agreement.[4] The failure to provide that opportunity and to give seemingly conclusive effect to the language of the release is precisely our objection to *Emery*. Given our Supreme Court's instruction to "examine the dynamics of the insurance transaction to ascertain what are the reasonable expectations of the consumer," *Collister v. Nationwide Life Insurance Company,* 479 Pa. 579, 595, 388 A.2d 1346, 1354 (1978), cert. denied 439 U.S. 1089, 99 S.Ct. 871, 59 L.Ed.2d 55 (1979), a review by our Supreme Court of *Emery* would appear to be in order.

Nevertheless, the chancellor's decision was based upon the present state of the law in this Commonwealth. Neither the court below nor this court may deviate from established legal principles. While we believe that the principle of law at issue in this case is not in harmony with the current trend, if a change is to be made it should be at the direction of our Supreme Court.

Accordingly, the order of the court below is affirmed.

WATKINS, J., concurs in the result.

4. For example, tender of the benefit received is ordinarily a prerequisite for rescission of a contract in order that the parties be returned to *status quo ante.* 12 Williston on Contracts, § 1529 (3rd ed. 1970). In the instant case, appellant concedes he is unable to return the $15,000 he received in settlement of his claim.